2023-1018

IN THE UNITED STATES COURT OF
APPEALS FOR THE FEDERAL CIRCUIT

THE BOEING COMPANY,

*Plaintiff-Appellant*,

v.

UNITED STATES,

*Defendant-Appellee*.

Appeal from the United States Court of Federal Claims
in No. 1:17-cv-01969-PEC, Judge Patricia E. Campbell-Smith

**BRIEF OF DEFENDANT-APPELLEE, THE UNITED STATES**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

ELIZABETH M. HOSFORD
Assistant Director

DANIEL B. VOLK
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
United States Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
(202) 353-7955

February 16, 2023

Attorneys for Defendant-Appellee

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... iv

STATEMENT OF RELATED CASES .......... ix

JURISDICTIONAL STATEMENT .......... 1

STATEMENT OF THE ISSUES .......... 2

STATEMENT OF THE CASE .......... 3

I. Changes To Cost Accounting Practices Under The CAS .......... 3

II. Boeing's Unilateral Changes To Its Cost Accounting Practices .......... 6

III. Procedural History .......... 7

SUMMARY OF ARGUMENT .......... 13

ARGUMENT .......... 16

I. Standard Of Review .......... 16

II. This Court Should Affirm The Trial Court's Grant Of Summary Judgment On Counts I Through III Of The Complaint .......... 16

A. The Court Of Federal Claims Lacks General Jurisdiction To Review The Validity Of Regulations .......... 17

B. The Trial Court Lacked Jurisdiction To Opine On The Validity Of FAR 30.606 Because A Determination In That Regard Is Unnecessary To The Resolution Of This Contract Dispute .......... 20

C. Even If The Court Of Federal Claims Had Jurisdiction To Consider Boeing's Arguments, The Grant Of Summary Judgment Should Be Affirmed .......... 28

III. The Trial Court Correctly Recognized That The Illegal Exaction Claim Presented In Count IV Of The Complaint Is Not Viable .........36

A. When The CDA Applies, It Is Exclusive.................................37

B. The CDA Applies To The Entirety Of Boeing's Complaint ....40

C. Because The CDA Applies, Tucker Act Relief Is Not Available .......................................................................41

1. The Law-Of-The-Case Doctrine Has No Application Here..........................................................................42

2. Illegal Exaction Claims Do Not Fit Within The CDA ...44

CONCLUSION .........................................................................................47

# TABLE OF AUTHORITIES

## CASES

*Action for Children's Television v. FCC*,
564 F.2d 458 (D.C. Cir. 1977)....................31

*Alliant Techsystems, Inc. v. United States*,
178 F.3d 1260 (Fed. Cir. 1999)....................37

*Alpine PCS, Inc. v. United States*,
878 F.3d 1086 (Fed. Cir. 2018).................... 16, 38

*Am. Tel. & Tel. Co. v. United States*,
307 F.3d 1374 (Fed. Cir. 2002)....................22

*Banks v. United States*,
741 F.3d 1268 (Fed. Cir. 2014)....................42

*Boeing Co. v. United States*,
143 Fed. Cl. 298 (2019)....................9

*Boeing Co. v. United States*,
162 Fed. Cl. 78 (2022)....................12

*Boeing Co. v. United States*,
968 F.3d 1371 (Fed. Cir. 2020).................... passim

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*,
137 S. Ct. 1312 (2017)....................1

*Brazos Elec. Power Co-op., Inc. v. United States*,
144 F.3d 784 (Fed. Cir. 1998)....................19

*Brownback v. King*,
141 S. Ct. 740 (2021)....................1

*Brownlee v. DynCorp*,
349 F.3d 1343 (Fed. Cir. 2003)....................18

*Cohen v. Postal Holdings, LLC*,
873 F.3d 394 (2d Cir. 2017) ........................................................................45

*Crocker v. United States*,
125 F.3d 1475 (Fed. Cir. 1997) ....................................................................17

*Dalton v. Sherwood Van Lines, Inc.*,
50 F.3d 1014 (Fed. Cir. 1995) ............................................................. passim

*Datascope Corp. v. SMEC, Inc.*,
879 F.2d 820 ..................................................................................................28

*DGR Assocs., Inc. v. United States*,
690 F.3d 1335 (Fed. Cir. 2012) ....................................................................18

*Earman v. United States*,
114 Fed. Cl. 81 (2013)...................................................................................18

*England v. The Swanson Grp., Inc.*,
353 F.3d 1375 (Fed. Cir. 2004) ....................................................................45

*FastShip, LLC v. United States*,
892 F.3d 1298 (Fed. Cir. 2018) ....................................................................16

*Freightliner Corp. v. Caldera*,
225 F.3d 1361 (Fed. Cir. 2000) ....................................................................22

*GHS Health Maint. Org., Inc. v. United States*,
536 F.3d 1293 (Fed. Cir. 2008) ....................................................................18

*Guarantee Co. of N. Am., USA v. Ikhana*, LLC,
941 F.3d 1140 (Fed. Cir. 2019) ....................................................................45

*Horne v. Dep't of Agric.*,
569 U.S. 513 (2013) ......................................................................................39

*Katz v. Cisneros*,
16 F.3d 1204 (Fed. Cir. 1994) .............................................................. 18, 19

*Land Shark Shredding, LLC v. United States*,
842 F. App'x 589 (Fed. Cir. 2021) ....................17

*Maine Cmty. Health Options v. United States*,
140 S. Ct. 1308 (2020) ....................38

*Martinez v. United States*,
333 F.3d 1295 (Fed. Cir. 2003) ....................17

*Morrison v. Nat'l Australia Bank Ltd.*,
561 U.S. 247 (2010) ....................20

*Motorola, Inc. v. West*,
125 F.3d 1470 (Fed. Cir. 1997) ....................40

*Nat'l Veterans Legal Servs. Program v. United States*,
968 F.3d 1340 (Fed. Cir. 2020) ....................44

*NI Industries, Inc. v. United States*,
841 F.2d 1104 (Fed. Cir. 1988) .................... 26, 27

*Parsons Evergreene, LLC v. Sec'y of Air Force*,
968 F.3d 1359 (Fed. Cir. 2020) .................... 20, 44

*Pathman Construction Co. v. United States*,
817 F.2d 1573 (Fed. Cir. 1987) ....................40

*Piszel v. United States*,
833 F.3d 1366 (Fed. Cir. 2016) ....................38

*Raytheon Co., Space & Airborne Sys.*,
ASBCA No. 57801, 15-1 B.C.A. ¶ 36,024 (May 7, 2015) ....................30

*Reflectone, Inc. v. Dalton*,
60 F.3d 1572 (Fed. Cir. 1995) ....................45

*Rice v. Martin Marietta Corp.*,
13 F.3d 1563 (Fed. Cir. 1993) ....................3

*SmithKline Beecham Corp. v. Apotex Corp.*,
439 F.3d 1312 (Fed. Cir. 2006) .......... 32

*Southfork Sys., Inc. v. United States,*
141 F.3d 1124 (Fed. Cir. 1998) .......... passim

*Texas Health Choice, L.C. v. Office of Pers. Mgmt.*,
400 F.3d 895 (Fed. Cir. 2005) .......... 18, 25, 26, 37

*Triax-Pac. v. Stone*,
958 F.2d 351 (Fed. Cir. 1992) .......... 8

*United States v. Bormes*,
568 U.S. 6 (2012) .......... 15, 37, 38

*Williams v. Secretary of the Navy*,
787 F.2d 552 (Fed. Cir. 1986) .......... 19

*Wilner v. United States*,
24 F.3d 1397 (Fed. Cir. 1994) .......... 21

*Winter v. FloorPro, Inc.*,
570 F.3d 1367 (Fed. Cir. 2009) .......... 39

## STATUTES AND REGULATIONS

5 U.S.C. § 551 *et seq.* .......... 17

28 U.S.C. § 1292(d)(2) .......... 12

28 U.S.C. § 1295(a)(3) .......... 1

28 U.S.C. § 1491 .......... 2, 15, 37

28 U.S.C. § 2501 .......... 40

41 U.S.C. §§ 1501-1506 .......... passim

41 U.S.C. §§ 7101-7109 .......... passim

48 C.F.R. § 9901.302(b) .......... 3

48 C.F.R. § 9903.201-2 .......... 3

48 C.F.R. § 9903.302-1 .......... 4

FAR 30.000 .......... 30

FAR 30.001 .......... 21

FAR 30.101(b) .......... 31

FAR 30.201-4(a) .......... 5

FAR 30.603-2(b)(3) .......... 6

FAR 30.604(h) .......... 21

FAR 30.606 .......... passim

FAR 52.230-2 .......... 5, 34, 35

FAR 52.230-6 .......... 5, 35

FAR 52.233-1 .......... 7

<u>OTHER</u>

S.Rep. No. 1118, 95th Cong., 2d Sess. 1 (1978), reprinted in 1978 U.S.C.C.A.N. 5235 .......... 45

## STATEMENT OF RELATED CASES

This action was previously before this Court in *The Boeing Company v. United States*, No. 19-2148. Now-Chief Judge Moore and Circuit Judges Taranto and Chen issued a decision in that appeal on August 10, 2020. *Boeing Co. v. United States*, 968 F.3d 1371 (Fed. Cir. 2020).

The following cases pending in the Court of Federal Claims and the Armed Services Board of Contract Appeals are likely to be directly affected by the Court's decision in this case: *Boeing Co. v. United States*, Nos. 17-1981C & 17-1983C (Fed. Cl.), and *Boeing Co.*, ASBCA Nos. 58030, 58593, 58594, 58660, 59212, 59220, 59813, 60376, 60403, 60522, 60736.

## JURISDICTIONAL STATEMENT

This Court possesses jurisdiction under 28 U.S.C. § 1295(a)(3) to review the September 21, 2022 judgment of the United States Court of Federal Claims.

In granting summary judgment in favor of the Government, the trial court dismissed Counts I through III of the complaint filed by plaintiff-appellant, the Boeing Company (Boeing), for lack of jurisdiction, and granted judgment on the merits for the Government regarding Count IV. Appx8-9. We agree with the trial court's conclusion that the Government was entitled to judgment on the entirety of the complaint at the summary judgment stage of this case. Characterization of portions of the judgment as jurisdictional, on the merits, or both,[1] is not of any practical consequence in this case. Nonetheless, as discussed in this brief and in briefs we filed below, because Boeing satisfied the jurisdictional prerequisites of the Contract Disputes Act of 1978 (CDA), codified as amended at 41 U.S.C. §§ 7101-7109, judgment as to Counts I through III of the complaint should be on the merits. *See* Appx2332 (supplemental brief filed below). However, the CDA applies exclusively to the entirety of Boeing's complaint in this case. Therefore, the trial court did not have jurisdiction to consider the alternative constitutional

[1] In some circumstances, "a ruling that the court lacks subject-matter jurisdiction may simultaneously be a judgment on the merits." *Brownback v. King*, 141 S. Ct. 740, 749 (2021); *see also Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.,* 137 S. Ct. 1312, 1319 (2017) ("We recognize that merits and jurisdiction will sometimes come intertwined.").

claim that Boeing presented under the Tucker Act, 28 U.S.C. § 1491, based on the same facts and theories, in Count IV of its complaint. *See* Appx2349-2350 (partial motion to dismiss filed below).

## STATEMENT OF THE ISSUES

1. Whether the CDA gives the Court of Federal Claims jurisdiction to resolve arguments regarding the validity of Federal Acquisition Regulation (FAR) 30.606—a regulation providing only internal Government direction—in a case in which Boeing cannot identify any reason why the validity of that regulation is determinative of its contractual rights.

2. If the Court does not affirm the dismissal of Counts I through III of Boeing's complaint (the contractual counts) on jurisdictional grounds, whether the trial court's grant of summary judgment in favor of the Government should be affirmed on the merits as to those counts.

3. With respect to Count IV of Boeing's complaint, whether the CDA supplies the exclusive framework for resolving the dispute at issue in this case, such that Boeing may not seek alternative Tucker Act relief on the theory that the contract price adjustment demanded by the Government constitutes an illegal exaction in violation of the Fifth Amendment to the United States Constitution.

## STATEMENT OF THE CASE

### I. Changes To Cost Accounting Practices Under The CAS

The Cost Accounting Standards (CAS) are a set of regulations, codified in Chapter 99 of Title 48 of the Code of Federal Regulations, that are "designed to achieve uniformity and consistency in the cost accounting practices governing measurement, assignment, and allocation of costs to contracts with the United States Government." 48 C.F.R. § 9901.302(b); *see, e.g., Rice v. Martin Marietta Corp.*, 13 F.3d 1563, 1565 (Fed. Cir. 1993). The CAS are promulgated by the CAS Board under the authority of the CAS Statute, codified as amended at 41 U.S.C. §§ 1501-1506. *See* 41 U.S.C. § 1502(a)(1).

In the CAS Statute, Congress directed the CAS Board to prescribe regulations requiring contractors with covered contracts,[2] "as a condition of contracting with the Federal Government," to:

> (1) disclose in writing their cost accounting practices . . . ; and
>
> (2) agree to a contract price adjustment, with interest, for any increased costs paid to the contractor . . . by the Federal Government because of a change in the contractor's . . . cost accounting practices . . . .

41 U.S.C. § 1502(f).

---

[2] *See* 41 U.S.C. § 1502(b)(1)(B); *see also* 48 C.F.R. § 9903.201-2 (Types of CAS coverage).

The CAS define three types of changes to a cost accounting practice[3]: (1) required changes, (2) unilateral changes, and (3) desirable changes. 48 C.F.R. § 9903.201-6(a)-(c). If the Government requires the contractor to change a cost accounting practice in a way that increases the contractor's costs, the Government often must pay the contractor. *See id.* § 9903.201-6(a)(1) (discussing findings to be made prior to making an equitable adjustment for a required change).

If a contractor decides that it wishes to make a change to its cost accounting practices, the change may be either "unilateral" or "desirable." *See id.* § 9903.201-6(b)(2), (c)(2). A unilateral change "means a change in cost accounting practice from one compliant practice to another compliant practice that a contractor with a CAS-covered contract(s) elects to make that has not been deemed desirable by the cognizant Federal agency official and for which the Government will pay no aggregate increased costs." *Id.* § 9903.201-6(b)(2). A desirable change "means a compliant change to a contractor's established or disclosed cost accounting practices that the cognizant Federal agency official finds is desirable and not detrimental to the Government and is therefore not subject to the no increased cost

[3] A cost accounting practice is "any disclosed or established accounting method or technique which is used for allocation of cost to cost objectives, assignment of cost to cost accounting periods, or measurement of cost." 48 C.F.R. § 9903.302-1.

prohibition provisions of CAS-covered contracts affected by the change." *Id.* § 9903.201-6(c)(2).

CAS obligations are incorporated into applicable contracts through contract clauses, such as Federal Acquisition Regulation (FAR) 52.230-2 and FAR 52.230-6. *See* FAR 30.201-4(a), (d).[4] These contract clauses not only encourage negotiation—they require it. Even for unilateral changes, the contractor has a contractual obligation to notify the Government in advance of implementing the change, FAR 52.230-6(b)(3), and to "[n]egotiate with the Contracting Officer to determine the terms and conditions under which a [unilateral] change may be made." FAR 52.230-2(a)(4)(ii). But the strongest incentive for contractors to discuss and negotiate their proposed accounting changes with the Government is the possibility of persuading the Government that it should deem the contractor's proposed change or changes to be desirable to the Government. If the contractor convinces the Government that a change to an accounting practice that the contractor desires to make would also be desirable to the Government, the change is "not subject to the no increased cost prohibition provisions of CAS-covered contracts," FAR 52.230-6(a), and may result in an equitable adjustment under which the Government pays increased costs resulting from the change. FAR

[4] The FAR is codified in Chapter 1 of Title 48 of the Code of Federal Regulations.

52.230-2(a)(4)(iii); *see also* FAR 30.603-2(b)(3) (non-exhaustive list of factors for contracting officer to consider in determining whether a change is desirable).

## II. Boeing's Unilateral Changes To Its Cost Accounting Practices

This case concerns unilateral changes made in 2011 by what was then known as the Fixed Wing segment of Boeing's Defense, Space & Security division. Appx19, Appx25-26. This business segment manufactured military aircraft, such as the F/A-18, for sale to the Department of Defense. Appx25. With about 7,000 employees and over $7 billion in sales, Boeing's Fixed Wing segment held many CAS-covered contracts. Appx25-26.

Effective January 1, 2011, Boeing's Fixed Wing segment implemented various unilateral changes to its cost accounting practices. Appx19. On June 27, 2014, Boeing submitted a cost impact proposal for these changes. Appx59. Two of the changes had materially increased the Government's costs on existing contracts. Appx59 ("As a result of the two unilateral accounting changes, government contracts realized increased costs in the amount of $940,007, plus compound interest . . . ."). Even though some of Boeing's other simultaneous changes decreased the Government's costs, the Government did not find any of Boeing's January 1, 2011 accounting changes to be desirable to the Government. *See* Appx19; Appx55.[5]

---

[5] Boeing has never argued in this case that the Government should have

## III. Procedural History

On December 21, 2016, following an audit by the Defense Contract Audit Agency, the Defense Contract Management Agency (DCMA) transmitted to Boeing a contracting officer's final decision demanding reimbursement of the increased costs, plus interest, from these two unilateral changes. Appx58-65. Boeing then began reimbursing the Government $8,900 per month, in accordance with an installment agreement between the parties. Appx46.

On September 25, 2017, Boeing submitted its own CDA claim letter to DCMA, requesting that DCMA reverse its December 2016 final decision. *See* Appx55-56. In its September 2017 claim letter, Boeing presented the legal theories that it would later assert in the Court of Federal Claims, arguing, in the alternative, that (1) the Government's demand for reimbursement constituted a breach of contract, (2) Boeing's affected contracts should be reformed to permit offsetting, or (3) the Government's demand constituted an illegal exaction. *See* Appx56.[6] In a November 21, 2017 letter, DCMA advised Boeing that DCMA

found any of these changes desirable or that the Government violated some contractual right or obligation by not doing so.

[6] Boeing's effort, at least initially, to re-characterize the parties' disagreement regarding the contract price adjustment due under Boeing's Government contracts as a breach of those contracts was misguided. Boeing's contracts with the Government contemplate the possibility of disagreements as to what payments are due under the terms of the contracts. *See* FAR 52.233-1 (Disputes Clause); Appx1906; Appellant Br. 29. Such disagreements do not

interpreted Boeing's September 2017 letter as a request for reconsideration of DCMA's December 21, 2016 final decision, which DCMA would not reconsider. Appx56.

On December 18, 2017, Boeing filed its complaint in the Court of Federal Claims. Appx18. Boeing's complaint contains four counts. Appx48-52. In Count I, Boeing alleges a breach of contract by the Government. Appx48. In Count II, Boeing requests a declaratory judgment "that its CAS-covered contracts . . . require the Government to offset the cost impacts of simultaneous unilateral changes in cost accounting practices." Appx50. In Count III, Boeing alternatively requests reformation of its CAS-covered contracts. In Count IV, Boeing alleges, in the alternative, that even if the Government's position is justified and "Boeing has no remedy in contract," the Government's "demand constitutes an illegal exaction of money," entitling Boeing "to relief under the Fifth Amendment to the United States Constitution." Appx52.

On May 30, 2019, the Court of Federal Claims granted judgment for the Government, Appx1081, in accordance with a May 29, 2019 opinion in which the

---

constitute allegations that one party has breached its contractual obligations. *See Triax-Pac. v. Stone*, 958 F.2d 351, 354 (Fed. Cir. 1992) ("contingencies contemplated by various contract clauses are remediable under those clauses of the contract, not as a breach of the contract"); Appx2407-2408. Regardless, these characterizations are not of any consequence in deciding the legal issues necessary to resolve this case. *See* Appellant Br. 30.

trial court concluded that Boeing (1) had waived its challenge to FAR 30.606 by entering into its contracts with the Government without contesting the validity of the regulation, and (2) had not pled an illegal exaction claim within the trial court's jurisdiction because 41 U.S.C. § 1503(b) is not a money-mandating statute. Appx1059-1080; *Boeing Co. v. United States*, 143 Fed. Cl. 298 (2019), *rev'd*, 968 F.3d 1371 (Fed. Cir. 2020). On August 10, 2020, this Court reversed both of those determinations and remanded for further proceedings consistent with its opinion. Appx1565; *Boeing Co. v. United States*, 968 F.3d 1371 (Fed. Cir. 2020).

On remand, the parties filed cross-motions for summary judgment. Appx1784; Appx1918. On August 31, 2021, after reviewing the parties' summary judgment briefs, the trial court issued an order requesting supplemental briefing. Appx2321-2322. In that order, the trial court stated:

> [I]t appears to the court that plaintiff's claims are, in substance, predicated on its position that Federal Acquisition Regulation (FAR) 30.606(a)(3)(ii) is invalid. Indeed, plaintiff makes this argument throughout its briefs. *See, e.g.*, . . . .
>
> Because plaintiff's claims appear inextricably linked to the validity of FAR 30.606(a)(3)(ii), the court directs the parties to address the source of this court's authority—or lack thereof—to review the validity of FAR 30.606(a)(3)(ii) before it proceeds with a decision on the merits in this case.

Appx2321-2322.

In response to the trial court's supplemental briefing order, we explained that although the Court of Federal Claims may have authority to examine the validity of a regulation if doing so was truly necessary to resolve a contract dispute, in this case Boeing cannot identify any contract right or obligation that hinges on whether FAR 30.606 was lawfully promulgated. Appx2326-2332. Accordingly, relying principally on *Southfork Sys., Inc. v. United States,* 141 F.3d 1124 (Fed. Cir. 1998), we argued that the presence of Boeing's arguments regarding the validity of FAR 30.606, while not requiring a dismissal of any count in the complaint for lack of jurisdiction, did nothing to advance Boeing's arguments on the merits. Appx2329-2332.

We also filed a partial motion to dismiss, requesting that the trial court dismiss Count IV of Boeing's complaint, which alleges an illegal exaction, for lack of jurisdiction because the CDA provides the exclusive framework for resolution of this dispute. Appx2348-2355; *see* 41 U.S.C. § 1503(a); *Boeing Co.*, 968 F.3d at 1381 ("The CAS statute expressly provides that judicial resolution of disputes over 'contract price adjustment[s]' shall take place under the . . . CDA . . . . That description fits Boeing's challenge . . . ."); *Dalton v. Sherwood Van Lines, Inc.*, 50 F.3d 1014, 1017 (Fed. Cir. 1995) ("When the Contract Disputes Act applies, it provides the exclusive mechanism for dispute resolution; the Contract

Disputes Act was not designed to serve as an alternative administrative remedy, available at the contractor's option."); *see also United States v. Bormes*, 568 U.S. 6, 13 (2012) ("statutory schemes with their own remedial framework exclude alternative relief under the general terms of the Tucker Act").

In a June 16, 2022 order, the Court of Federal Claims denied our partial motion to dismiss. Appx2429-2431. The trial court concluded that it was "unclear" whether this Court had "implicitly" ruled that Boeing's illegal exaction claim is a "viable alternative to the CDA claims." Appx2430-2431. The trial court's order stated:

> Defendant is correct that the Federal Circuit did not analyze whether this court has jurisdiction over plaintiff's illegal exaction claim as an alternative to a CDA claim. . . . It is equally true, however, that the Federal Circuit was aware that plaintiff intends to pursue both CDA claims and an illegal exaction claim, and explicitly held that this court has jurisdiction over the latter. As such, it is unclear to the court whether the Circuit knowingly, implicitly found that the illegal exaction claim is an appropriate and viable alternative to the CDA claims. In the court's view, it must resolve this ambiguity in plaintiff's favor given the clear, affirmative statements from the Circuit determining that this court has jurisdiction over the illegal exaction claim and the court's duty to abide by rulings from the Circuit.
>
> If defendant wishes to seek further clarity on this issue, the court invites defendant to file a motion for leave to file an interlocutory appeal to the Federal Circuit. Such an appeal may be the most appropriate avenue to allow the Circuit to make explicit any ruling that may be implicit in its remand decision.

Appx2430-2431. Despite the trial court's invitation, we did not ask it to certify this issue for a petition for interlocutory appeal because it was not clear that dismissal of Count IV of the complaint alone would "materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(d)(2), considering that Boeing relies on the same facts and arguments in support of all counts in its complaint. Appx2432.

On September 21, 2022, the trial court granted summary judgment in favor of the Government. Appx1-10; *Boeing Co. v. United States*, 162 Fed. Cl. 78 (2022). Notwithstanding Boeing's invocation of the CDA, looking to "the true nature of the action," Appx5, the trial court concluded that it lacked jurisdiction to consider Boeing's challenge to the validity of FAR 30.606 and dismissed Counts I through III of the complaint without prejudice. Appx9. Thus, although the trial court's judgment on Counts I through III is in the Government's favor, the trial court's rationale differs from the argument that we made (that those counts should be dismissed on the merits because the CDA's jurisdictional prerequisites had been met but Boeing's arguments do not support granting relief to it).

As to the illegal exaction claim in Count IV of the complaint, the reasoning in trial court's opinion is the same as our position in substance—that the CDA supplies the exclusive framework for resolving this dispute, foreclosing alternative Tucker Act relief, Appx8-9—although the trial court's judgment on that count was

on the merits, Appx10, whereas we argued that this conclusion should lead to a jurisdictional dismissal of Count IV. Appx2355. This appeal followed.

## SUMMARY OF ARGUMENT

In this litigation, Boeing aims to invalidate a provision of the FAR. *E.g.*, Appx1634 ("FAR 30.606(a)(3)(ii) . . . . must be struck down as arbitrary and capricious"); Appx2240 ("that regulation was unlawfully promulgated and is invalid, and thus must be set aside."); Appellant Br. 1 ("In pertinent part, Boeing's arguments have challenged the validity and application of [FAR] 30.606(a)(3)(ii) . . . .").

The regulation at issue, FAR 30.606(a)(3)(ii), provides only internal Government direction, instructing the Government's contracting officers as to how to determine cost impacts from accounting changes that a contractor decides to make, even though the Government does not find them desirable. By its plain language, FAR 30.606 does not purport to adjust Boeing's rights under its contracts. As such, the validity of the regulation is not determinative of Boeing's contract rights.

Indeed, Boeing cannot explain how the validity of a regulation in which the Government merely provides instructions to its own contracting officers makes any difference in a determination of Boeing's contractual rights. Whether the Government is entitled to the contract payment it demanded from Boeing does not

depend on the validity of FAR 30.606. Accordingly, the Court of Federal Claims had no authority under the CDA to resolve such questions.

Concluding that the true nature of Boeing's complaint is not a contract dispute within its CDA jurisdiction, the trial court dismissed the contractual counts of the complaint for lack of jurisdiction and granted summary judgment for the Government. Although the trial court's jurisdictional analysis is reasonable in light of Boeing's misguided quest to invalidate FAR 30.606, in our view, the trial court had jurisdiction under the CDA over Boeing's challenge to the Government's payment demand. Boeing simply failed to present any argument entitling it to relief, so the Government was entitled to summary judgment. Moreover, even if the trial court had jurisdiction to consider Boeing's arguments regarding the validity of FAR 30.606, those arguments are without merit. The Government was therefore entitled to summary judgment regardless of the scope of the trial court's jurisdiction. Thus, if this Court agrees with either the trial court's analysis or our position, the grant of summary judgment on Counts I though III of the complaint should be affirmed.

As to Count IV of Boeing's complaint, the trial court correctly determined that Boeing's alternative illegal exaction claim is not viable because the CDA exclusively controls the resolution of this case. When the CDA applies, it is exclusive. *See Dalton v. Sherwood Van Lines, Inc.*, 50 F.3d 1014, 1017 (Fed. Cir.

1995) ("When the Contract Disputes Act applies, it provides the exclusive mechanism for dispute resolution; the Contract Disputes Act was not designed to serve as an alternative administrative remedy, available at the contractor's option."); *see also United States v. Bormes*, 568 U.S. 6, 13 (2012) ("statutory schemes with their own remedial framework exclude alternative relief under the general terms of the Tucker Act").

The applicability of the CDA is beyond dispute in this case. As this Court observed in its prior opinion in this case, a provision of the CAS Statute, 41 U.S.C. § 1503(a), requires the dispute at issue in this case to be resolved under the CDA. *Boeing Co.*, 968 F.3d at 1381 ("The CAS statute expressly provides that judicial resolution of disputes over 'contract price adjustment[s]' shall take place under the [CDA]. . . . That description fits Boeing's challenge . . . .").

The CDA therefore supplies the exclusive framework for resolution of this dispute, leaving no room for Boeing's alternative request for a constitutional remedy under the more general provisions of the Tucker Act, 28 U.S.C. § 1491. This Court should affirm the trial court's grant of summary judgment in favor of the Government.

# ARGUMENT

## I. Standard Of Review

This Court reviews the Court of Federal Claims' decision to grant summary judgment, as well as its jurisdictional analysis, de novo. *See FastShip, LLC v. United States*, 892 F.3d 1298, 1302 (Fed. Cir. 2018); *Alpine PCS, Inc. v. United States*, 878 F.3d 1086, 1092 (Fed. Cir. 2018). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *FastShip, LLC*, 892 F.3d at 1302 (quoting Rule 56(a) of the Rules of the United States Court of Federal Claims). In this case, the parties have repeatedly agreed that there is no genuine dispute as to any material fact. Appx86-87; Appx89; Appx94.

## II. This Court Should Affirm The Trial Court's Grant Of Summary Judgment On Counts I Through III Of The Complaint

Although the trial court did not adopt our rationale regarding the contractual allegations presented in Counts I through III of the complaint, both its analysis and ours lead to the correct conclusion that the Court of Federal Claims did not possess jurisdiction under the CDA to review the validity of FAR 30.606. If this Court agrees with the trial court's analysis, Appx5-8, there is nothing more to analyze and the judgment dismissing Counts I through III of the complaint for lack of jurisdiction should be affirmed. If this Court agrees with our analysis, it should affirm the trial court's grant of summary judgment on that basis. Finally, even if

this Court agrees with Boeing on jurisdiction, the Court should nonetheless affirm the grant of summary judgment in favor of the Government because Boeing's arguments fail on the merits.

### A. The Court Of Federal Claims Lacks General Jurisdiction To Review The Validity Of Regulations

As this Court has observed, the Court of Federal Claims "lacks the general federal question jurisdiction of the district courts, which would allow it to review . . . agency[] actions and to grant relief pursuant to the Administrative Procedure Act" (APA), codified as amended at 5 U.S.C. § 551 *et seq.* *Crocker v. United States*, 125 F.3d 1475, 1476 (Fed. Cir. 1997). Thus, the Court of Federal Claims does not possess authority to review the validity of regulations under the judicial review provisions of the APA, 5 U.S.C. §§ 701-706. *See Martinez v. United States*, 333 F.3d 1295, 1313 (Fed. Cir. 2003) (en banc) ("the Court of Federal Claims lacks APA jurisdiction").

Accordingly, as this Court has observed on more than one occasion, "[c]hallenges to the validity of a regulation governing a procurement must be brought in federal district court under the Administrative Procedure Act." *Land Shark Shredding, LLC v. United States*, 842 F. App'x 589, 593 (Fed. Cir. 2021) (unpublished); *Southfork Sys., Inc. v. United States,* 141 F.3d 1124, 1135 (Fed. Cir. 1998) ("If a bidder wishes to challenge the validity of a regulation governing a procurement, the proper method of doing so is to bring an action in federal district

court under the [APA]."); *see also DGR Assocs., Inc. v. United States*, 690 F.3d 1335, 1341 (Fed. Cir. 2012) ("And although the subsequent decisions from the GAO and the Court of Federal Claims took positions against the validity of the SBA's parity regulations, neither has the authority to invalidate properly promulgated regulations of an Executive Branch agency."); *Katz v. Cisneros*, 16 F.3d 1204, 1209 (Fed. Cir. 1994) ("no relief is available in the Court of Federal Claims here because the case challenges the interpretation of law . . . . It is not a contract case. [Plaintiff] . . . seeks judicial interpretation of a federal regulation. The multifarious and alternative pleas should not obscure this point.").

Nonetheless, other cases from this Court suggest that arguments concerning the validity of a regulation may be considered in appropriate cases, as the trial court recognized. Appx6 ("The Federal Circuit has previously held that, under certain circumstances, the court has jurisdiction to consider challenges to regulations made in the context of a CDA claim." (citing *Texas Health Choice, L.C. v. Office of Pers. Mgmt.*, 400 F.3d 895, 900 (Fed. Cir. 2005)); *see also GHS Health Maint. Org., Inc. v. United States*, 536 F.3d 1293, 1296 (Fed. Cir. 2008) ("The central question is whether or not the Nonreconciliation Regulation is valid.")[7]; *Brownlee v. DynCorp*, 349 F.3d 1343, 1356 (Fed. Cir. 2003) ("Thus, the

---

[7] *But see Earman v. United States*, 114 Fed. Cl. 81, 106 (2013) ("*Texas Health* and *GHS Health* do not 'hold' that this court has jurisdiction to rule on the validity of regulations merely because they are incorporated into a contract which

FAR regulation in question is not inconsistent with the statute, and it is not invalid. The contractor's . . . costs . . . were therefore not allowable.").

Given the mixed outcomes of cases decided by this Court, the trial court looked to the "true nature" of the underlying action. Appx5 ("the gravamen of plaintiff's complaint is a challenge to the validity of FAR 30.606. . . . This is . . . 'not a contract case.'"); *see Katz*, 16 F.3d at 1207 ("Regardless of the characterization of the case ascribed by [plaintiff] in its complaint, we look to the true nature of the action in determining the existence or not of jurisdiction."); *Brazos Elec. Power Co-op., Inc. v. United States*, 144 F.3d 784, 787 (Fed. Cir. 1998); *Williams v. Secretary of the Navy*, 787 F.2d 552, 557 (Fed. Cir. 1986) ("Substance, not form, is controlling . . . .").

If this Court agrees with the Court of Federal Claims' analysis, its judgment regarding Counts I through III of the complaint should be affirmed. Admittedly, the trial court's analysis differs from our position in this case. However, as discussed below, even under our position, the trial court did not have jurisdiction to opine on the validity of FAR 30.606. And regardless of the scope of the trial court's jurisdiction, the Government was entitled to summary judgment in this case.[8]

---

is alleged to have been breached."), *aff'd*, 589 F. App'x 991 (Fed. Cir. 2015).

[8] In this case, the characterization of the issues as jurisdictional or merits

### B. The Trial Court Lacked Jurisdiction To Opine On The Validity Of FAR 30.606 Because A Determination In That Regard Is Unnecessary To The Resolution Of This Contract Dispute

Under the CDA, the Court of Federal Claims has jurisdiction to resolve contract disputes. 41 U.S.C. § 7104(b); *see, e.g.*, *Parsons Evergreene, LLC v. Sec'y of Air Force*, 968 F.3d 1359, 1363 (Fed. Cir. 2020) ("The CDA provides a process for dispute resolution of certain contract claims against the government."). In this case, Boeing has disputed the Government's entitlement to the reimbursement it has demanded. In support of its position, Boeing argues that FAR 30.606, a regulation providing internal direction to the Government's contracting officers, is invalid. Appellant Br. 1; Appx1634; Appx2240. To demonstrate that it would be appropriate for the Court to resolve those arguments, or to require the Court of Federal Claims to do so, Boeing must show that the outcome of the case depends in some way on the validity of this regulation. It cannot make that showing.

Boeing asserts that the contracting officer "calculated the demand amount by relying on FAR 30.606(a)(3)(ii)." Appellant Br. 29. In support of that assertion, Boeing cites Appx60, but neither that page nor any other page of the contracting

---

questions has no practical effect on the outcome or the parties' rights. *See Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 254 (2010) (declining to remand based on jurisdictional error and proceeding to the merits where "nothing in the analysis of the courts below turned on the mistake").

officer's final decision contains any reference to FAR 30.606(a)(3)(ii). Appx58-64.[9]

Thus, the contracting officer did not rely on FAR 30.606 in her demand letter to Boeing, but it would make no difference if she had done so. Boeing correctly recognizes that review in the Court of Federal Claims was de novo. Appellant Br. 29; 41 U.S.C. § 7104(b)(4). The agency contracting officer's rationale is therefore immaterial to the trial court's resolution of the case. *See Wilner v. United States*, 24 F.3d 1397, 1402 (Fed. Cir. 1994) (en banc) ("once an action is brought following a contracting officer's decision, the parties start in court or before the board with a clean slate").

The regulation that Boeing seeks to invalidate, FAR 30.606, does not purport to limit Boeing's contract rights. It speaks exclusively to the Government's contracting officers. FAR 30.606. Repeatedly using language such as "[t]he CFAO[10] shall," FAR 30.606(a)(1), the regulation is designed to ensure

---

[9] The final decision states that the "Government calculated the increase or decrease in costs for CAS-covered contracts in accordance with FAR 30.604(h)," Appx59, a provision to which Boeing has not objected. The following page of the final decision states that Boeing's unilateral changes "resulted in increased costs to government contracts, as defined in and in accordance with FAR [Subpart] 30.6 in the amount of $1,064,773." Appx60.

[10] Cognizant Federal Agency Official (CFAO) "means the contracting officer assigned by the cognizant Federal agency to administer the CAS." FAR 30.001.

that the Government's contracting officers act in a uniform manner and take a consistent position on behalf of the Government in resolving the cost impacts from changes to contractors' cost accounting practices.[11] Not every regulation exists for the benefit of contractors. *See, e.g.*, *Freightliner Corp. v. Caldera*, 225 F.3d 1361, 1365 (Fed. Cir. 2000). Some regulations "provide only internal governmental direction." *Am. Tel. & Tel. Co. v. United States*, 307 F.3d 1374, 1380 (Fed. Cir. 2002). The validity of FAR 30.606, a regulation in which the Government merely provides instructions to its own contracting officers, is not determinative of Boeing's contract rights.

There is no question in this case as to whether the Government's final decision is consistent with the internal direction in FAR 30.606. Boeing does not dispute that the contracting officer's final decision is consistent with the procedures set forth in that regulation. If Boeing interprets its contracts to preclude the Government from following those procedures, it has always been free to make that argument. Whether FAR 30.606 was validly promulgated is immaterial to that inquiry, and Boeing's long-running quest to invalidate a regulation providing internal Government direction is deeply misguided.

---

[11] Contrary to an assertion by Boeing, Appellant Br. 12-13, the promulgation of FAR 30.606 did not represent a change in the Government's position regarding offsetting of unilateral changes. *See* Appx1942 ("As explained by the FAR Council in the final rule, . . . 'offsetting . . . ' had never been permitted."); *see also* Appx1939-1941; Appx1969-1972; Appx2133.

This approach of analyzing what effect, if any, a plaintiff's contention that a regulation is invalid has on the parties' contract dispute is consistent with this Court's decision in *Southfork Systems, Inc.* 141 F.3d at 1132-35. In that case, the Court of Federal Claims had jurisdiction to consider a contract claim, but Southfork's arguments of regulatory invalidity were meritless because they did not implicate the contract rights Southfork sought to vindicate. *Id.* at 1134-35.

Southfork protested an Air Force procurement, arguing that the Air Force breached its implied contractual obligation to fairly and honestly consider Southfork's proposal by, among other things, relying on invalid regulations. *Id.* at 1130-31. Both the Court of Federal Claims and this Court rejected those arguments. *See id.* at 1132-35.

Neither court harbored any illusion that Southfork's "real complaint" was anything other than an APA challenge to the validity of the regulations. This Court observed:

> Southfork's real complaint was that the Department of Education and DOD [the Department of Defense] had acted arbitrarily in promulgating the regulations that the Air Force followed in conducting the . . . procurement. If a bidder wishes to challenge the validity of a regulation governing a procurement, the proper method of doing so is to bring an action in federal district court under the [APA].

*Id.* at 1135. Nonetheless, the Court of Federal Claims dismissed the regulatory invalidity counts of Southfork's complaint for failure to state a claim, and this

Court affirmed. *Id.* at 1134.

Although Southfork's arguments of regulatory invalidity were not a jurisdictional deficiency, upon the merits, those arguments did not state a plausible contract claim. *Id.* at 1134-35. This Court explained:

> Southfork did invoke the court's jurisdiction by asserting that there had been "a breach of the Air Force's duty to fairly and honestly consider all offers." However, it did not follow that assertion with an allegation that the Air Force had acted in bad faith or that it had failed to comply with the pertinent procurement regulations. Rather, . . . Southfork contended that by complying with those regulations, the Air Force had violated statutory requirements because the regulations themselves were fatally inconsistent with the statute they purported to implement . . . . Yet, this is precisely the kind of allegation that does not implicate the implied-in-fact contract of good faith and fair dealing. The reason is that neither bad faith nor unfair dealing arises when an agency does nothing more than follow previously promulgated regulations in conducting a procurement. Put another way, Southfork did not allege that the Air Force had failed to follow the regulations that were promulgated by the Department of Education and DOD . . . . And that is the nub of the implied-in-fact contract of good faith and fair dealing. The government promises to comply with duly promulgated regulations in conducting a procurement. The regulations pre-exist the implied-in-fact contract and therefore constitute part of the agreement. That the regulations under which the government conducts a procurement may be an invalid implementation of a governing statute does not mean that the government has breached its duty to be fair and honest to a particular bidder.

*Id.*

Although the facts and arguments in this case are not identical to those in *Southfork*, the same basic outcome is appropriate in this case. Boeing invoked the Court of Federal Claims' jurisdiction under the CDA, and the jurisdictional prerequisites of the CDA were satisfied. The judgment should therefore be on the merits, as we urged in briefing below. Appx2332. However, like in *Southfork*, Boeing's arguments regarding the validity of FAR 30.606 do nothing to advance its arguments on the merits. And to be clear, Boeing's efforts to invalidate the regulation *are* outside the Court of Federal Claims' CDA jurisdiction, even if the presence of those arguments in its briefs does not require a jurisdictional dismissal of any count in the complaint.

In its appellate brief, Boeing relies heavily on *Texas Health Choice, L.C. v. Office of Personnel Management*, 400 F.3d 895 (Fed. Cir. 2005). *E.g.*, Appellant Br. 32 (asserting that "*Texas Health* is indistinguishable from this case"). That case does not support Boeing's position. The holding of *Texas Health* was that a district court had erred in denying a motion to transfer the complaint to the Court of Federal Claims because the plaintiff's claim was within the exclusive jurisdiction of the Court of Federal Claims. *Texas Health Choice, L.C.*, 400 F.3d at 896 ("Texas Health's suit against OPM is governed exclusively by the dispute

resolution scheme set forth in the Contract Disputes Act").[12] In this case, the dispute regarding the contract payment demanded by the Government is also governed by the CDA. Regardless of whether Boeing could have brought an APA action challenging the validity of FAR 30.606,[13] it could not have asked any court other than the Court of Federal Claims to overturn the contracting officer's December 2016 payment demand. But as *Southfork* illustrates, that the Court of Federal Claims may be the exclusive court with jurisdiction over a dispute does not mean that arguments regarding the validity of a regulation do anything to advance the plaintiff's position on the merits of its case.

The regulation at issue in *Texas Health* was fundamentally different than the regulation that Boeing seeks to invalidate in this case. Unlike in this case, in *Texas Health*, the challenged regulation did purport to establish the rights of the contractor under the parties' contract. 400 F.3d at 897.[14] The regulation at issue in

---

[12] The *Texas Health* panel was not unanimous. 400 F.3d at 900 (Mayer, J., dissenting).

[13] Although this question has been the subject of some debate throughout the course of this case, *e.g.*, Appx2331 n.3, it is immaterial to the issues now before the Court. Even assuming that Boeing was unable to bring an APA challenge regarding FAR 30.606, the absence of an APA remedy would not have any effect on the scope of the jurisdiction Congress has granted to the Court of Federal Claims.

[14] *NI Industries, Inc. v. United States*, 841 F.2d 1104 (Fed. Cir. 1988), another case on which Boeing relies, Appellant Br. 36, is distinguishable on the same basis. 841 F.2d at 1107 (considering an unpublished rule that stated "[t]he

that case provided: "In the event this contract is not renewed, neither the Government nor the Carrier shall be entitled to any adjustment or claim for the difference between the subscription rates prior to rate reconciliation and the actual subscription rates." *Id.* Thus, the regulation at issue in *Texas Health* did not merely provide internal direction to the Government as to what position the Government's contracting officer should take. Rather, that regulation asserted that Texas Health would not be entitled under its contract to the adjustment it was seeking.

The regulation that Boeing challenges in this case is quite different. The provision that Boeing complains of, FAR 30.606(a)(3)(ii), does not purport to control Boeing's rights under its contracts with the Government. Rather, the regulation simply provides instructions to the Government's contracting officers, ensuring that they act in a uniform and consistent manner. Undoubtedly, the Government's instructions to its contracting officers in FAR 30.606 are consistent with the Government's view of its contract rights. But nothing in that regulation purports to adjust or limit Boeing's contractual rights.

In short, there was no need for the trial court to resolve Boeing's arguments regarding the validity of FAR 30.606 to decide the contract dispute at issue in this case. It therefore had no jurisdiction to do so.

---

first submitter of a VECP shall be entitled to . . . .").

### C. Even If The Court Of Federal Claims Had Jurisdiction To Consider Boeing's Arguments, The Grant Of Summary Judgment Should Be Affirmed

This case arrives at this Court after both parties filed motions for summary judgment. From the beginning of the case, the parties have repeatedly disclaimed the existence of factual disputes and agreed that the issues are legal. Appx86-87; Appx89; Appx94. Upon considering the parties' cross-motions for summary judgment, the Court of Federal Claims granted summary judgment for the Government. Appx10.

On appeal, Boeing does not argue that its own summary judgment motion should have been granted, instead choosing to confine its arguments to questions of the trial court's jurisdiction. However, that does not prevent us from seeking affirmance of the trial court's grant of summary judgment on alternative grounds—and we do. *See Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 822 n. 1 (Fed. Cir. 1989) ("Appellees always have the right to assert alternative grounds for affirming the judgment that are supported by the record."). Whatever the scope of the Court of Federal Claims' jurisdiction to consider Boeing's arguments may have been, all of Boeing's arguments fail on the merits, and the Government was therefore entitled to judgment as a matter of law.

There are two permutations under which this Court might disagree to some degree with trial court's jurisdictional analysis. Under either scenario, the

Government is still entitled to affirmance of summary judgment. First, this Court might adopt the jurisdictional position we advanced below: that Boeing's effort to support Counts I through III of the complaint with inconsequential arguments regarding the validity of a regulation providing internal Government direction did not deprive the trial court of jurisdiction to enter judgment on the merits of those counts. Appx2332; *see Southfork Systems, Inc.*, 141 F.3d at 1134-35. As discussed above, our position is that the trial court lacked authority to opine on the validity of FAR 30.606 because a resolution of those arguments was not necessary to resolve Counts I through III of the complaint, given that the force of this regulation is of no consequence to the determination of whether the Government had the right to recover the payment demanded. If this Court agrees with our position, it may modify the trial court's judgment, but the grant of summary judgment should still be affirmed.

Under the second scenario, if the Court were to agree entirely with Boeing's position as to trial court's jurisdiction, the grant of summary judgment in favor of the Government should still be affirmed. Even if Boeing's arguments regarding the validity of FAR 30.606 are within the trial court's jurisdiction under the CDA, and should have been considered in resolving its claims, those arguments have no merit.

As a starting point, it is our understanding that Boeing would concede the recoverability of the payment demanded by the contracting officer *but for* Boeing's contention that it is entitled to an offset for cost-saving changes (even though the Government did not find those changes desirable either). Thus, unless Boeing established its entitlement to an offset, the Government was entitled to summary judgment.

Boeing's procedural invalidity arguments do not warrant extensive discussion. One of Boeing's arguments is that the drafters of the FAR lacked authority to promulgate FAR 30.606 because, in Boeing's view, only the CAS Board has authority to regulate in this sphere. Appx1814. As we discussed at length in briefing below, *e.g.*, Appx1961-1969, this argument, which has been rejected by the Armed Services Board of Contract Appeals, has no merit. *Raytheon Co., Space & Airborne Sys.*, ASBCA No. 57801, 15-1 B.C.A. ¶ 36,024 (May 7, 2015). The CAS Board has authority over the CAS. 41 U.S.C. § 1502(a)(1). There is no conflict between FAR 30.606 and the CAS, and the existence of the CAS does not foreclose the drafters of the FAR from promulgating regulations that the Government's contracting officers must follow in administering the CAS.[15]

[15] FAR Part 30 provides policies and procedures for applying the CAS, which are expressly incorporated into FAR Part 30. FAR 30.000 ("This part describes policies and procedures for applying the Cost Accounting Standards

Boeing has also argued that FAR 30.606 is invalid because it was promulgated without notice and an opportunity to comment. Appx1820. But the Government did publish a proposed regulation in the Federal Register, and the Government did allow time for, and receive, comments. *See* Appx1973-1977. Thus, this argument essentially amounts to Boeing arguing that the final regulation needed to mirror the proposed regulation, a proposition that has long been rejected in the APA context. *See, e.g.*, *Action for Children's Television v. FCC*, 564 F.2d 458, 470 (D.C. Cir. 1977).

Boeing's principal argument, that FAR 30.606(a)(3)(ii) is invalid because it conflicts with a provision of the CAS Statute, 41 U.S.C. § 1503(b), is also without merit. As an initial matter, one may wonder why Boeing insists on couching its statutory conflict theory as an argument in favor of invalidating a regulation, rather than directly arguing that the Government's payment demand violates the statute. At times, Boeing appears to have made the direct argument in briefing below, *e.g.*, Appx1806, but Boeing seems not to have preserved that argument, either in the trial court or in this Court. When the trial court requested supplemental briefing,

---

Board (CASB) rules and regulations ( 48 CFR Chapter 99) to negotiated contracts and subcontracts."); FAR 30.101(b) ("Contracts that refer to this part 30 for the purpose of applying the policies, procedures, standards and regulations promulgated by the CASB pursuant to 41 U.S.C. chapter 15, shall be deemed to refer to the CAS, and any other regulations promulgated by the CASB (see 48 CFR Chapter 99), all of which are hereby incorporated in this part 30.").

making clear that it understood Boeing's arguments as being premised on the contention that FAR 30.606 is invalid, Appx2321-2322, Boeing did not argue otherwise in its supplemental brief. Appx2381; Appx2385-2387. In its opening brief in this Court, Boeing does not appear to argue that, even if the trial court's conclusion that it had no jurisdiction to review the validity of FAR 30.606 is correct, it should have proceeded to analyze some other argument asserted by Boeing. Thus, this Court may conclude that Boeing has waived any direct argument that the CAS Statute requires the result it seeks. *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) ("arguments not raised in the opening brief are waived").

Regardless, the contention that the CAS Statute compels or allows offsetting is contradicted by its plain text. The relevant provision, 41 U.S.C. § 1503(b), "Amount of adjustment," provides:

> A contract price adjustment undertaken under section 1502(f)(2) of this title shall be made, where applicable, on relevant contracts between the Federal Government and the contractor that are subject to the cost accounting standards so as to protect the Federal Government from payment, in the aggregate, of increased costs, as defined by the Cost Accounting Standards Board. The Federal Government may not recover costs greater than the aggregate increased cost to the Federal Government, as defined by the Board, on the relevant contracts subject to the price adjustment unless the contractor made a change in its cost accounting practices of which it was aware or should have been aware at the time of the price

> negotiation and which it failed to disclose to the Federal Government.

41 U.S.C. § 1503(b). Boeing seeks to interpret "in the aggregate" to mean that it can combine the effects of any number of unilateral accounting changes, so long as it times them to occur simultaneously. However, the use of "aggregate" in the statute plainly refers to the aggregate effect of "a change"—one change—across all "relevant contracts," not a combining of multiple changes. *Id.* ("A contract price adjustment . . . shall be made . . . on relevant contracts . . . so as to protect the Federal Government from payment, in the aggregate, of increased costs . . . ."); *id.* ("The Federal Government may not recover costs greater than the aggregate increased cost to the Federal Government . . . on the relevant contracts subject to the price adjustment unless the contractor made a change . . . .").

Thus, the text of 41 U.S.C. § 1503(b) lends no support to the contention that Congress intended to confer on Boeing a statutory right to offset the effects of multiple changes to its cost accounting practices by timing them to occur simultaneously. If anything, the statutory text contradicts Boeing's argument. The best that Boeing could do would be to convince the Court that Congress did not consider the question of whether the effects of multiple simultaneous accounting changes could be combined. Such a conclusion would not assist Boeing.

The context of this dispute is a contractual relationship. Boeing and the Government entered into contracts with one another. If the CAS Statute is silent as

to the permissibility of offsetting—neither allowing nor prohibiting it—the result is not that Boeing gets to change the bargain and impose its preferences on the Government. Boeing enters into its contracts with the Government with the representation that it will follow its disclosed cost accounting practices, as of the time of contract formation. FAR 52.230-2(a)(1)-(2). Changing those accounting practices changes the parties' bargain. Boeing may negotiate its proposed changes with the Government, as its contracts contemplate. *See* FAR 52.230-2 & -6. But absent an agreement between the parties, Boeing has not bargained for—and does not have—a contractual right to require the Government to agree to Boeing's preferred amalgamation of changes to the accounting practices that were agreed upon at contract formation.

Boeing's narrative is that the Government is getting "an improper windfall"—through changes that Boeing is unilaterally imposing on the Government, no less. Appellant Br. 2. The reality is that Boeing is asking the Court to interfere with a complex contractual relationship between Boeing and the Government to supplant the normal rule, under which contracting partners must agree to modifications of their bargain, and replace it with a judicially-created rule that would largely eliminate any incentive for contractors to negotiate proposed accounting changes with the Government.

Importantly, this case relates entirely to unilateral changes that the Government did not find desirable. Under the existing rules, if Boeing wants to make changes to its accounting practices that will benefit the Government, it ought to be able to convince the Government that its proposed changes are desirable,[16] in which case the parties may negotiate an equitable adjustment and the change or changes are not subject to the "no increased cost prohibition provisions of CAS-covered contracts." FAR 52.230-6(a). If the Government does not agree that a proposed change is desirable, Boeing may or may not elect to implement it nonetheless, but there is no basis to compel the Government to credit Boeing for accounting changes that the Government does not find desirable.

Boeing's argument is built on the premise that the net effect of its changes was good for the Government, even though the Government did not reach that conclusion itself. If Boeing's set of changes are truly to the Government's benefit, as Boeing would have this Court assume, why has it not convinced the Government to deem them desirable?

---

[16] The Government may also agree retrospectively that one or more accounting changes should be deemed desirable, though it is not obligated to do so. *See, e.g.*, *Northrop Grumman Systems Corp. v. United States*, No. 21-2191C, Compl., Dkt. No. 1 (Fed. Cl. Nov. 19, 2021) (protective complaint expressing desire to continue settlement discussions with Government and hope that Government will agree that accounting changes are desirable); *see also id.* Dkt. No. 9 (stipulation of dismissal after desirability determination and settlement agreement).

This is not a case in which there is any argument specific to the underlying accounting changes. Boeing does not argue that the Government should have found any of its changes desirable or that the Government violated some contractual right or obligation by not doing so. Rather, Boeing wants the Court to re-write the terms of its contracts, granting it unilateral rights for which it did not bargain. The contracting parties—not the Court—are best situated to agree on what is fair, which can only be determined on a case-by-case basis.

In short, Boeing has no right—contractual or otherwise—to demand that the Government offset the impacts of unilateral accounting changes that the Government does not find desirable. Regardless of the scope of the Court of Federal Claims' jurisdiction to consider them, Boeing's arguments are without merit and the Government was entitled to summary judgment on Counts I through III of the complaint.

## III. The Trial Court Correctly Recognized That The Illegal Exaction Claim Presented In Count IV Of The Complaint Is Not Viable

When it applies, the CDA supplies the exclusive framework for resolution of a contract dispute. *Sherwood Van Lines, Inc.,* 50 F.3d at 1017. The CDA applies to the entirety of Boeing's complaint. Accordingly, as the trial court recognized, Boeing's alternative request for a constitutional remedy under the more general terms of the Tucker Act is not viable.

### A. <u>When The CDA Applies, It Is Exclusive</u>

"When the Contract Disputes Act applies, it provides the exclusive mechanism for dispute resolution; the Contract Disputes Act was not designed to serve as an alternative administrative remedy, available at the contractor's option." *Sherwood Van Lines, Inc.,* 50 F.3d at 1017.

Accordingly, when the CDA applies, the Tucker Act has no application. To be sure, the Tucker Act references the CDA, 28 U.S.C. § 1491(a)(2), and some cases suggest that "the CDA operates in tandem with the Tucker Act." *Texas Health Choice, L.C.*, 400 F.3d at 899; *see Alliant Techsystems, Inc. v. United States*, 178 F.3d 1260, 1264 (Fed. Cir. 1999). However, such cases do not consider the principle discussed in *United States v. Bormes*, 568 U.S. 6 (2012), that "statutory schemes with their own remedial framework exclude alternative relief under the general terms of the Tucker Act." *Id.* at 13.

The Tucker Act has long been understood as a gap-filling statute. *See id.* ("The 1855 Act was confined to a gap-filling role."). "The Tucker Act's jurisdictional grant, and accompanying immunity waiver, suppl[y] the missing ingredient for an action against the United States for the breach of monetary obligations *not otherwise judicially enforceable*." *Id.* at 12 (emphasis added). When a monetary obligation is otherwise judicially enforceable, under a statutory scheme containing its own judicial remedies, the Tucker Act is inapplicable. *Id.*;

*see also id.* at 14 ("Where a specific statutory scheme provides the accoutrements of a judicial action, the metes and bounds of the liability Congress intended to create can only be divined from the text of the statute itself.").

"Because a 'precisely drawn, detailed statute pre-empts more general remedies,' . . . [a statute containing its own] self-executing remedial scheme supersedes the gap-filling role of the Tucker Act." *Id.* at 12-13; *see also Maine Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1328 (2020) ("The Tucker Act yields when the obligation-creating statute provides its own detailed remedies, or when the Administrative Procedure Act . . . provides an avenue for relief."); *Alpine PCS, Inc. v. United States*, 878 F.3d 1086, 1092-93 (Fed. Cir. 2018) ("This court has drawn the same conclusion in several cases, recognizing that when such a specific and comprehensive scheme for administrative and judicial review is provided by Congress, the Court of Federal Claims' Tucker Act jurisdiction over the subject matter covered by the scheme is preempted." (internal quotation marks and brackets omitted)).

Constitutional claims are no exception. *See Alpine PCS, Inc.*, 878 F.3d at 1092. When a comprehensive statutory scheme provides the remedy that would be due if a claim is successful, a plaintiff does not get to choose to seek relief under the Fifth Amendment instead of, or as an alternative to, the statutory scheme

Congress provided. *See Horne v. Dep't of Agric.*, 569 U.S. 513, 527 (2013).[17]

The CDA is a comprehensive statutory scheme containing its own judicial remedies. 41 U.S.C. § 7103 (administrative exhaustion); *id.* § 7104 (contractor's right of appeal); *id.* § 7107 (judicial review of board decisions); *id.* § 7108 (payment of claims); *id.* § 7109 (interest); *see Winter v. FloorPro, Inc.*, 570 F.3d 1367, 1369 (Fed. Cir. 2009) ("The CDA was enacted to 'provide[ ] a fair, balanced, and comprehensive statutory system of legal and administrative remedies in resolving government contract claims.'"); Appellant Br. 8 ("CDA provides a 'comprehensive' framework for addressing and resolving all government contract performance and payment disputes").

The CDA's judicial remedies never require invocation of the Tucker Act. Just as there is no need to resort to the Tucker Act for appeals filed with the boards of contract appeals, there is also no need to look beyond the text of the CDA when a CDA case is filed in the Court of Federal Claims. *See* 41 U.S.C. § 7104. The Tucker Act has no application in CDA litigation because the CDA leaves no gap

---

[17] *See also Piszel v. United States*, 833 F.3d 1366, 1376 (Fed. Cir. 2016) ("We have held that when the government itself breaches a contract, a party must seek compensation from the government in contract rather than under a takings claim. As we have explained, '[t]aking claims rarely arise under government contracts because the Government acts in its commercial or proprietary capacity in entering contracts, rather than its sovereign capacity' and therefore the 'remedies arise from the contracts themselves, rather than from the constitutional protection of private property rights.'").

for the Tucker Act to fill.

Indeed, when a need to examine the exclusivity of the CDA *vis-à-vis* a provision that would apply in Tucker Act cases arose, this Court recognized that the CDA stands on its own, apart from provisions that would apply to Tucker Act suits. In *Pathman Construction Co. v. United States*, 817 F.2d 1573 (Fed. Cir. 1987), a case arising prior to enactment of the CDA's statute of limitations for claim submission,[18] this Court rejected application, in CDA cases, of the statute of limitations at 28 U.S.C. § 2501, which applies to Tucker Act claims. 817 F.2d at 1580 ("Once a contractor elects to proceed under the Disputes Act, the six-year statute of limitations in 28 U.S.C. § 2501 is not applicable.").

If the CDA applies to Boeing's complaint, it is the exclusive basis for this Court's jurisdiction to resolve the complaint.

### B. <u>The CDA Applies To The Entirety Of Boeing's Complaint</u>

In support of its illegal exaction claim, Boeing relies on the same factual allegations and arguments that it relies on for its contractual theories. Appx2365 (Boeing stating: "Here, the Government has acknowledged that 'Boeing's illegal exaction claim is based on the same factual allegations and arguments as its contract claims.'" (emphasis omitted)). Each count in Boeing's complaint is aimed

[18] The six-year statute of limitations at 41 U.S.C. § 7103(a)(4)(A) was added to the CDA in 1994. *See Motorola, Inc. v. West*, 125 F.3d 1470, 1473 (Fed. Cir. 1997).

at achieving an identical end. *See id.*; Appx1828 (Boeing stating: "If the Court grants relief to Boeing on its breach of contract claim, it need not address Boeing's alternative claim, which alleges an illegal exaction violating Boeing's rights under the Due Process Clause of the Fifth Amendment to the U.S. Constitution.").

Moreover, by statute, the CDA governs this case—a point on which both parties agree and this Court recognized in its 2020 opinion. 41 U.S.C. § 1503(a) ("If the Federal Government and a contractor or subcontractor fail to agree on a contract price adjustment, including whether the contractor or subcontractor has complied with the applicable cost accounting standards, the disagreement will constitute a dispute under chapter 71 of this title."); *Boeing Co.*, 968 F.3d at 1381 ("The CAS statute expressly provides that judicial resolution of disputes over 'contract price adjustment[s]' shall take place under the [CDA]. . . . That description fits Boeing's challenge: Boeing and the government disagree about the proper contract price adjustment to reflect Boeing's post-contract-formation 2011 changes in its cost accounting practices."); Appellant Br. 23 ("under the CAS statute, disagreements over contract price adjustments are committed to the CDA").

### C. <u>Because The CDA Applies, Tucker Act Relief Is Not Available</u>

The CDA therefore supplies the exclusive framework for resolving this dispute. *See Sherwood Van Lines, Inc.,* 50 F.3d at 1017 ("When the Contract

Disputes Act applies, it provides the exclusive mechanism for dispute resolution; the Contract Disputes Act was not designed to serve as an alternative administrative remedy, available at the contractor's option."). The Court of Federal Claims correctly concluded that Boeing's complaint could only be brought under the CDA and its "illegal exaction claim is barred in this case." Appx8.

#### 1. The Law-Of-The-Case Doctrine Has No Application Here

Resisting this conclusion, Boeing first argues that the trial court violated the law-of-the-case doctrine. Appellant Br. 45. Neither that doctrine, nor the mandate rule encompassed within it, has any application on this issue, which has not previously been considered by this Court.

The "law-of-the-case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Banks v. United States*, 741 F.3d 1268, 1276 (Fed. Cir. 2014) (internal quotation omitted). This rule prevents "relitigation of already-settled issues." *Id.* "The mandate rule, encompassed by the broader law-of-the-case doctrine, dictates that" absent certain exceptions, "an inferior court has no power or authority to deviate from the mandate issued by an appellate court." *Id.*

However, as Boeing acknowledges, Appellant Br. 45, these rules are "limited to issues 'actually decided, either explicitly or by necessary implication'" in the previous litigation. *Banks,* 741 F.3d at 1276. This Court has never before

considered or addressed whether Boeing may pursue constitutional relief under an illegal exaction theory, despite the conceded applicability of the CDA.

Boeing states that "this Court held that 'Boeing has established jurisdiction for its illegal exaction claim.'" Appellant Br. 46 (quoting *Boeing Co.*, 968 F.3d at 1383). But Boeing leaves out the beginning of that sentence, along with the sentence preceding it. The two complete sentences from this Court's opinion read:

> Thus, *to establish Tucker Act jurisdiction* for an illegal exaction claim, a party that has paid money over to the government and seeks its return must make a non-frivolous allegation that the government, in obtaining the money, has violated the Constitution, a statute, or a regulation.
>
> *Under this standard*, Boeing has established jurisdiction for its illegal exaction claim.

*Boeing Co.*, 968 F.3d at 1383 (emphasis added). Thus, this Court decided that Boeing met the standard for pleading an illegal exaction *under the Tucker Act*. *Id.* This Court did not decide that a plaintiff may seek an illegal exaction remedy under the Tucker Act when the CDA indisputably applies. The Court of Federal Claims did not violate the law-of-the-case doctrine or the mandate rule.[19]

[19] The Court of Federal Claims seemed to avoid characterizing this portion of its ruling as a jurisdictional determination in deference to this Court. *See* Appx8; Appx2430-2431. That was unnecessary. This Court's decision as to one jurisdictional question does not imply that it resolved the entire universe of possible jurisdictional questions. Although the distinction is of no practical consequence in this case, our position is that Count IV of the complaint should have been dismissed for lack of jurisdiction because, at least once the applicability

### 2. Illegal Exaction Claims Do Not Fit Within The CDA

Boeing next argues that the Contract Disputes Act provides the Court of Federal Claims with jurisdiction to resolve Boeing's illegal exaction claim, even though it is a non-contractual claim, because it "relates to Boeing's contract[s], and all procedural requirements under the CDA have been satisfied." Appellant Br. 47. The Court should reject this argument.

Boeing concedes that illegal exaction claims are not contract claims. Appx2369 (Boeing stating: "The Government correctly states . . . that illegal exaction claims are 'non-contractual,' in that they involve a violation of a constitutional provision, statute, or regulation, rather than violation of a contractual duty."); *see Boeing Co.*, 968 F.3d at 1382 ("Case law involving the Tucker Act . . . has long distinguished three types of claims against the federal government: contractual claims, illegal-exaction claims, and money-mandating-statute claims."); *Nat'l Veterans Legal Servs. Program v. United States*, 968 F.3d 1340, 1347 (Fed. Cir. 2020) ("Illegal exaction claims are one of two classes of non-contract claims over which the Little Tucker Act provides district court jurisdiction.").

Meanwhile, the CDA has long been widely understood as covering contract

---

of the CDA was determined, the Court of Federal Claims had no authority to consider granting relief under an alternative Tucker Act theory. Appx2348.

claims. *See Parsons Evergreene, LLC v.*, 968 F.3d at 1363 ("The CDA provides a process for dispute resolution of certain contract claims against the government."); *Guarantee Co. of N. Am., USA v. Ikhana*, LLC, 941 F.3d 1140, 1143 (Fed. Cir. 2019) ("The CDA . . . suppl[ies] a single point of contact for contract claims."); *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 401 (2d Cir. 2017) ("the CDA's purpose of collecting contract claims against the government . . . ."); *England v. The Swanson Grp., Inc.*, 353 F.3d 1375, 1379 (Fed. Cir. 2004) ("To streamline the resolution of government contract claims, the CDA . . . ."); *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1580 (Fed. Cir. 1995) ("two goals of the CDA: providing for the efficient and fair resolution of contract claims"); S.Rep. No. 1118, 95th Cong., 2d Sess. 1 (1978), reprinted in 1978 U.S.C.C.A.N. 5235, 5235 ("THE CONTRACT DISPUTES ACT OF 1978 PROVIDES A FAIR, BALANCED, AND COMPREHENSIVE STATUTORY SYSTEM OF LEGAL AND ADMINISTRATIVE REMEDIES IN RESOLVING GOVERNMENT CONTRACT CLAIMS.").

Moreover, the CDA itself uses the term "contract claim," and in a manner that sinks Boeing's effort to assign a broader meaning to the phrase "claim . . . relating to a contract." 41 U.S.C. § 7105(e)(2) ("an agency board may grant any relief that would be available to a litigant asserting a contract claim in the United States Court of Federal Claims"); *id.* § 7105(a)(1) (establishment of board after

determination "that the volume of contract claims justifies" it); *id.* § 7107(f)(3) (district court requests for advisory opinions shall be directed "to the agency board having jurisdiction under this chapter to adjudicate appeals of contract claims . . . .").

Nothing in the text of the CDA supports the counterintuitive notion that a constitutional claim of illegal exaction fits within the parameters of a statute titled "Contract Disputes Act." Nor does Boeing identify any case in which anyone has ever before suggested that an illegal exaction claim may be resolved under the CDA, and we are certainly not aware of one. The CDA covers claims for contractual relief, not constitutional remedies.

Finally, Boeing argues that its illegal exaction claim should survive because "a party may 'alleg[e] in the same complaint two alternative theories for recovery against the Government." Appellant Br. 50. This argument fails to acknowledge, among other things, the role of 41 U.S.C. § 1503(a), which provides that the dispute presented in Boeing's complaint must be resolved under the CDA. *Id.* ("If the Federal Government and a contractor or subcontractor fail to agree on a contract price adjustment, including whether the contractor or subcontractor has complied with the applicable cost accounting standards, the disagreement will constitute a dispute under chapter 71 of this title.").

Regardless, this case is much too far along for such arguments regarding pleading alternative claims. This Court has already recognized that the CDA applies to this dispute. *Boeing Co.*, 968 F.3d at 1381 ("The CAS statute expressly provides that judicial resolution of disputes over 'contract price adjustment[s]' shall take place under the [CDA]. . . . That description fits Boeing's challenge . . . .").

Once Boeing's entitlement to relief under the CDA is determined, this case is at an end. There is no further analysis to be conducted to determine whether Boeing could be entitled to a constitutional remedy as a result of its contract dispute with the Government.

## CONCLUSION

For these reasons, we respectfully request that the Court affirm the Court of Federal Claims' judgment.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

/s/ Elizabeth M. Hosford
ELIZABETH M. HOSFORD
Assistant Director

/s/ Daniel B. Volk
DANIEL B. VOLK
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
United States Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
(202) 353-7955

February 16, 2023

Attorneys for Defendant-Appellee

FORM 19. Certificate of Compliance with Type-Volume Limitations

Form 19
July 2020

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2023-1018

**Short Case Caption:** Boeing Company v. United States

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- ☑ the filing has been prepared using a proportionally-spaced typeface and includes 12,346 words.
- ☐ the filing has been prepared using a monospaced typeface and includes ________ lines of text.
- ☐ the filing contains ________ pages / ________ words / ________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ________).

Date: 02/16/2023

Signature: /s/ Daniel B. Volk

Name: Daniel B. Volk

Save for Filing