UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

2023 - 1018

---

THE BOEING COMPANY,

*Plaintiff-Appellant*,

v.

UNITED STATES,

*Defendant-Appellee*.

---

Appeal from the United States Court of Federal Claims
in Case No. 1:17-cv-01969-PEC, Judge Patricia E. Campbell-Smith

---

# REPLY BRIEF OF APPELLANT THE BOEING COMPANY

---

Jade Totman
THE BOEING COMPANY
929 Long Bridge Drive
Arlington, VA 22202

Scott M. McCaleb
Jon W. Burd
Gary S. Ward
George E. Petel
Jennifer Eve Retener
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
(202) 719-7000

April 6, 2023

*Counsel for Appellant*
*The Boeing Company*

## CERTIFICATE OF INTEREST

1. The full name of every entity represented in the case by the counsel filing the certificate.

- The Boeing Company

2. For each entity, the name of every real party in interest, if that entity is not the real party in interest.

- None/Not Applicable

3. For each entity, that entity's parent corporation(s) and every publicly held corporation that owns ten percent (10%) or more of its stock.

- None/Not Applicable

4. The names of all law firms, partners, and associates that have not entered an appearance in the appeal, and (A) appeared for the entity in the lower tribunal; or (B) are expected to appear for the entity in this court.

- Charles J. Cooper, Cooper & Kirk, PLLC
- Michael W. Kirk, Cooper & Kirk, PLLC
- John D. Ohlendorf, Cooper & Kirk, PLLC
- Howard C. Nielson, Jr., Cooper & Kirk, PLLC
- Suzette W. Derrevere, The Boeing Company
- Seth H. Locke, Perkins Coie LLP

5. See Statement of Related Cases (Filed as part of Boeing's initial Certificate of Interest, Docket No. 7, and in its Opening Brief, Docket No. 11).

/s/ Scott M. McCaleb
Scott M. McCaleb
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
(202) 719-7000

April 6, 2023

*Counsel for Appellant*
*The Boeing Company*

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................ 1

ARGUMENT ............................................................................................... 5

I. The Court of Federal Claims Erred in Dismissing Counts I Through III for Lack of Jurisdiction. ............................................. 5

II. If The Court Accepts The Government's Invitation To Move Beyond Jurisdiction And Consider The Merits, Boeing Should Prevail. ..................................................................... 9

A. The Windfall Contract Price Adjustment Demanded by the Government Violates the CAS Statute. ......................... 10

1. The Plain Text of the CAS Statute Bars the Government's Claim. ..................................................... 11

2. The Government's Claim Conflicts with Its Decades-Long Construction of the CAS Statute. ..................................................................... 16

3. The Government's New Arguments To Escape the CAS Statute Are Baseless. ........................... 17

B. FAR 30.606 Cannot Salvage the Government's Windfall Contract Price Adjustment. ...................................... 19

1. FAR 30.606(a)(3)(ii) Conflicts Directly with the CAS Statute. ........................................................... 20

2. The FAR Council Promulgated FAR 30.606(a)(3)(ii) Without Authority. ............................... 20

3. The Rulemaking Process Was Fatally Flawed. ....................................................................... 23

C. The Government Cannot Simultaneously Disavow FAR 30.606 and Claim That It Justifies a Windfall Contract Price Adjustment. ...................................................... 25

III. The Court of Federal Claims Erred in Dismissing Boeing's Illegal Exaction Claim. ....27

A. The Law Of The Case Establishes The COFC's Jurisdiction. ....27

B. The CDA Does Not Preclude An Illegal Exaction Claim. ....27

CONCLUSION ....29

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS ....31

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allina Health Services v. Sebelius*,
746 F.3d 1102 (D.C. Cir. 2014) ........................................................24

*Boeing Co. v. United States*,
680 F.2d 132 (Ct. Cl. 1982) ........................................................25

*Boeing Co. v. United States*,
968 F.3d 1371 (Fed. Cir. 2020) ........................................................5, 8, 27, 29

*Bolivarian Republic of Venezuela v. Helmerich & Payne International Drilling Co.*,
581 U.S. 170 (2017) ........................................................9

*Brownback v. King*,
141 S. Ct. 740 (2021) ........................................................9

*Brownlee v. DynCorp*,
349 F.3d 1343 (Fed. Cir. 2003) ........................................................25

*Chevron, U.S.A., Inc. v. Natural Resource Defense Council, Inc.*,
467 U.S. 837 (1984) ........................................................20

*City of Arlington, Texas v. FCC*,
569 U.S. 290 (2013) ........................................................20

*Constant v. United States*,
929 F.2d 654 (Fed. Cir. 1991) ........................................................27

*DIRECTV Group, Inc. v. United States*,
670 F.3d 1370 (Fed. Cir. 2012) ........................................................14, 15

*Encino Motorcars, LLC v. Navarro*,
136 S. Ct. 2117 (2016) ........................................................24

*Epic Systems Corp. v. Lewis*,
138 S. Ct. 1612 (2018) ........................................................21

*ExxonMobil Oil Corp. v. F.E.R.C.*,
487 F.3d 945 (D.C. Cir. 2007)....................13, 14

*Fairholme Funds, Inc. v. United States*,
26 F.4th 1274 (Fed. Cir. 2022),
*cert. denied,* 143 S.Ct. 563 (2023)....................9

*GHS Health Maintenance Organization v. United States*,
536 F.3d 1293 (Fed. Cir. 2008) ....................25

*Hillman v. Maretta*,
569 U.S. 483 (2013)....................18

*Horne v. Department of Agriculture*,
569 U.S. 513 (2013)....................28, 29

*International Union, United Mine Workers of America v. Mine Safety & Health Administration*,
407 F.3d 1250 (D.C. Cir. 2005)....................24

*Jewelers Vigilance Committee, Inc. v. Ullenberg Corp.*,
853 F.2d 888 (Fed. Cir. 1988) ....................10

*Kimco Realty Corp. v. United States*,
187 F. App'x 986 (Fed. Cir. 2006) ....................10

*Lockheed Martin Corp. v. United States*,
70 Fed. Cl. 745 (2006)....................14, 15, 18

*NI Industries v. United States*,
841 F.2d 1104 (Fed. Cir. 1988) ....................25

*Resources Conservation Group, LLC v. United States*,
597 F.3d 1238 (Fed. Cir. 2010) ....................28

*Smith International, Inc. v. Hughes Tool Co.*,
759 F.2d 1572 (Fed. Cir. 1985) ....................27

*Texas Health Choice, L.C. v. Office of Personnel Management*,
400 F.3d 895 (Fed. Cir. 2005) ....................7, 25, 26, 28

*Todd Construction, L.P. v. United States*,
656 F.3d 1306 (Fed. Cir. 2011) ....................28

*Union Pacific Railroad Co. v. Surface Transportation Board*, 863 F.3d 816 (8th Cir. 2017) ....................21, 23

*United States v. Grumman Aerospace Corp.*, 927 F.2d 575 (Fed. Cir. 1991) ....................25

**Administrative Agency Decisions**

*Boeing Co.*, ASBCA No. 57549, 13 BCA ¶ 35,427 ....................4, 9, 16

*Lockheed Martin Corp.*, ASBCA No. 53822, 07-2 BCA ¶ 33,614....................17

*Raytheon Co.*, ASBCA No. 56701, 11-1 BCA ¶ 34,735....................17

*Raytheon Co, Space & Airborne Systems*, ASBCA No. 57801, 15-1 BCA ¶ 36,024....................9, 23

**Statutes**

1 U.S.C. § 1....................14

28 U.S.C. § 2106....................10

41 U.S.C. § 1502....................*passim*

41 U.S.C. § 1503....................*passim*

41 U.S.C. § 1707....................5, 24

41 U.S.C. §§ 7101-7109 ....................1, 28

**Regulations**

FAR 30.606....................*passim*

48 C.F.R. § 9903.201-6....................17

**Other Authorities**

65 Fed. Reg. 20,854 (Apr. 18, 2000) ....................24

68 Fed. Reg. 40,104 (July 3, 2003)..........................................................................24

S. Rep. No. 100-424 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5687 ......................22

## INTRODUCTION

Boeing's opening brief addressed the central question on appeal: Whether the Court of Federal Claims (COFC) has jurisdiction over Boeing's Complaint challenging a Contracting Officer's Final Decision (COFD) imposing a contract price adjustment due to a change in Boeing's cost accounting practices. The COFC does have jurisdiction because each claim in Boeing's Complaint relates to a procurement contract subject to the Contract Disputes Act (CDA), 41 U.S.C. §§ 7101-7109. Indeed, the Government agrees the CDA applies, and there is no disputing that the CDA's procedural requirements have been satisfied. This is dispositive for each count in Boeing's Complaint, and therefore the Court should reverse and remand to the COFC for a decision on the merits.

The Government, however, asks this Court to decide this case on the merits as an "alternate ground." Boeing did not address the merits in its opening brief because this is a court of review and the COFC has never ruled on the merits, nor did the COFC's jurisdictional ruling even implicate the merits; further, the cases cited by the Government do not support the Government's conflation of jurisdictional and merits-based issues. The Government's request also marks a significant change in the Government's position, considering its previous representations to this Court that the COFC first should address the parties' significant merits-based arguments. Even so, if the Court is so inclined, the Court

should resolve this case by holding that the Government's demand for a windfall contract price adjustment from Boeing is unlawful and effects a breach of contract or, in the alternative, an illegal exaction.

Effective January 1, 2011, Boeing made a change to its cost accounting practices. Boeing changed eight of the accounting practices disclosed in its Cost Accounting Standards (CAS) disclosure statement, which identifies the practices Boeing uses to measure, assign, and allocate costs to its government contracts. There is no dispute that Boeing, by effecting this change in its cost accounting practices, has saved the Government money—*i.e.*, the Government has paid less, not more, on Boeing's contracts, a savings calculated to be $1,489,000. Nevertheless, the Government responded by demanding, on top of that $1,489,000, an additional contract price adjustment of $1,064,773. In short, the Government is not satisfied with its $1,489,000; it wants $2,553,773, plus interest.

The Government's claim demanding that contract price adjustment is unlawful because it violates the statutory direction for when, and how, any such contract price adjustment should be calculated. The CAS Statute requires a contractor to "agree to a contract price adjustment, with interest, for any increased costs paid to the contractor … by the Federal Government because of a change in the Contractor's or subcontractor's cost accounting practices." 41 U.S.C. § 1502(f)(2). This price adjustment "shall be made, where applicable … so as to

protect the Federal Government from ***payment, in the aggregate***, of increased costs," *id.* § 1503(b)[1]; further, the Government "***may not recover costs greater than the aggregate increased cost to the Federal Government***," *id.*

There are no "aggregate increased costs" paid by the Government due to Boeing's "change in cost accounting practices." To the contrary, the aggregate impact is a $1.48 million decrease in costs paid by the Government. Appx846. To claim otherwise, the Government has ***disaggregated*** the cost impact calculation directed by the CAS Statute, disregarding the cost impacts resulting in any savings to the Government and instead considering only the two discrete cost impacts that increased costs. It demanded a contract price adjustment based solely on the sum of those two cost impacts, ignoring the offsetting, aggregate impact of the rest. A bigger windfall to the Government is hard to imagine: Despite saving $1.48 million from the aggregate impact of Boeing's changed accounting practices, the Government still demands—unlawfully—an additional payment of $1 million.

The Government has previously maintained that FAR 30.606(a)(3)(ii) requires it to calculate "aggregate increased costs" in this manner. In its opposition brief before this Court, however, the Government disavows FAR 30.606(a)(3)(ii) as irrelevant. Regardless, however, of whether FAR 30.606(a)(3)(ii) is the basis for the

---

[1] All emphases are added unless noted otherwise.

Government's claim, the Government has violated the CAS Statute, and the Government fails to shoulder its burden to demonstrate otherwise.

The Government argues, for example, that the CAS Statute's use of the term "a change" is license to focus discretely on only the individual cost impact of an individual "cost accounting practice change." Gov't Br. at 33; Appx58. That argument ignores the statute's use of the plural form to describe what is being amended in the "change": "the contractor's … cost accounting ***practices***." Whether a contractor modifies one or multiple practices, it has effected "a change in [its] cost accounting practices." The Government's interpretation thus departs from the CAS Statute's use of "cost accounting practices," plural, and it disaggregates that which the CAS Statute requires it to "aggregate." In any case, the CAS Statute must be interpreted in accordance with its recognized purpose—to prohibit windfall recoveries by the Government—and consistent with its historical interpretation and application. If FAR 30.606 is truly irrelevant, as the Government now suggests, the Government remains bound to the previously established practice that prohibits the claim it has asserted here. *Boeing Co.*, ASBCA No. 57549, 13 BCA ¶ 35,427.

In any event, FAR 30.606(a)(3)(ii) does not justify the Government's windfall contract price adjustment. Not only does FAR 30.606(a)(3)(ii) directly conflict with the CAS Statute, but the provision also was promulgated by the Federal Acquisition Regulatory Council (FAR Council) without authority, without the notice-and-

comment period required by 41 U.S.C. § 1707, and without meaningful explanation to justify its departure from the Government's historic, established practice. At bottom, FAR 30.606(a)(3)(ii) is an improperly promulgated, unlawful rule now being exploited by the Government to reap an unjustified windfall from Boeing. It provides no foundation on which a government claim can stand.

For the foregoing reasons and those that follow, the Court should reverse and remand with instructions either (a) to proceed to the merits or (b) to enter summary judgment for Boeing.

## ARGUMENT

### I. The Court of Federal Claims Erred in Dismissing Counts I Through III for Lack of Jurisdiction.

The Government's brief concedes, as it must, that "[t]he applicability of the CDA is beyond dispute in this case." Gov't Br. at 15 (citing *Boeing Co. v. United States*, 968 F.3d 1371, 1381 (Fed. Cir. 2020)). This fact alone—that the CDA applies—warrants a reversal of the COFC's decision that it lacks jurisdiction over Counts I through III.

As we explained in our opening brief, the COFC enjoys broad jurisdiction under the CDA to resolve all claims that relate to a procurement contract, including all claims at issue in this dispute. Boeing Br. at 26-42. Here, the Government has asserted a claim against Boeing, a COFD demanding a contract price adjustment of $1,064,773, which the Government has calculated as "increased costs to government

contracts, as defined in and in accordance with ***FAR Part 30.6***." Appx60. Boeing responded by asserting its own claim, which the Government denied. Boeing Br. at 29-30. Boeing then timely filed this action at the COFC. In its Complaint, Boeing "sought relief under the contract, as contemplated by the CDA," *id.* at 31, asserting specifically that the Government's claim effected a breach of contract by demanding a windfall contract price adjustment in violation of the CAS Statute, for which Boeing is entitled to monetary damages (Count I), a declaratory judgment clarifying the Government's contractual duties (Count II), and contract reformation to accord with the CAS Statute (Count III), Appx48-53. Accordingly, the Government and Boeing have satisfied the CDA's procedural requisites—there is no argument to the contrary—and therefore the COFC has jurisdiction over all claims in this dispute.

The Government, however, asks this Court to recognize two new limitations on the COFC's CDA jurisdiction—limitations that conflict with precedent and would subvert the COFC's broad authority to undertake *de novo* review of CDA claims. The Court should reject this invitation. First, the Government declares that the "'true nature' of the underlying action" is a challenge to the validity of a regulation, FAR 30.606, Gov't Br. at 19, and the COFC "does not possess authority to review the validity of regulations under the judicial review provisions of the [Administrative Procedure Act (APA)]," *id.* at 17. This argument fails because the APA and decisions interpreting it do not apply when a contracting party pursues a

CDA claim. *See* Boeing Br. at 39-43. Further, the Government's characterization of this dispute as an attack on FAR 30.606(a)(3)(ii) is immaterial to the COFC's jurisdiction,[2] as precedent establishes. *Texas Health Choice, L.C. v. Office of Pers. Mgmt.*, 400 F.3d 895, 900 (Fed. Cir. 2005) (stating that, even if a complaint "sought only to invalidate" a regulation, it is "of no consequence to [] jurisdiction" so long as it "relates to a dispute implicating a contract with the Government"). The Government has no answer to this argument.

Second, the Government argues the COFC lacks jurisdiction because FAR 30.606 is purportedly irrelevant, immaterial, and not controlling in this action. Gov't Br. at 13, 21, 27. This remarkable about-face by the Government—until now, it has relied on FAR 30.606 as the basis for its claim seeking a windfall contract price adjustment—must be rejected. FAR Subpart 30.6 is the stated basis for how the Government calculated the contract price adjustment demanded in its claim, Appx60 (calculating "increased costs" based on "FAR [Subpart] 30.6"), so even if the COFD lacks an express citation to FAR 30.606**(a)(3)(ii*)***, as the Government now argues, *see* Gov't Br. at 21-22, the regulation still is squarely within the scope of *de novo* review. Indeed, in this litigation, the Government has repeatedly affirmed its

---

[2] In any event, the Government's characterization of this action is incorrect. As discussed, Boeing has asserted a breach of contract claim demanding monetary damages, a declaratory judgment, and reformation. Appx48-52.

reliance on FAR 30.606, *see* Appx226; Appx249; Appx471; Appx869-870; Appx1198; Appx1207-1209; Appx1930; Appx1955; Appx2296, including at oral argument before the COFC, Appx1972 ("FAR 30.606 clearly applies and its interpretation is of critical importance … FAR 30.606 is the key issue in the case."). This Court has recognized as much. *See Boeing Co.*, 968 F.3d at 1373 ("[DCMA], invoking [FAR] 30.606 … demanded that Boeing pay the government.").

This additional newly minted jurisdictional argument is barred, as well. The record below confirms the obvious relevance of FAR 30.606: For nearly three decades, the Government uniformly interpreted the CAS Statute as requiring it to aggregate all cost impacts when a contractor makes a change to one or more of its cost accounting practices—but only until 2005, when the FAR Council promulgated FAR 30.606(a)(3)(ii), propounding a new interpretation and practice.[3] Appx1800. The ASBCA has twice concluded that the "***established practice*** of the government agencies" before the promulgation of FAR 30.606(a)(3)(ii) was to "consider[] and net[]" all cost impacts when a contractor makes a change in one or more of its cost

[3] The Government insists that "FAR 30.606 did not represent a change in the Government's position regarding offsetting of unilateral changes," Gov't Br. at 22 n.11, but as shown above, the historical record shows otherwise, and the Government has no authority supporting that view. The Government cites only its prior briefing (three times) and the FAR Council's self-justifying rationale accompanying FAR 30.606(a)(3)(ii), *see id.*, which are—as the uncontroverted record demonstrates—devoid of historical support.

accounting practices. *Boeing Co.*, ASBCA No. 57549*, supra*; *accord Raytheon Co., Space & Airborne Sys.*, ASBCA No. 57801, 15-1 BCA ¶ 36,024. The ASBCA's *Boeing* decision applies here to bar the Government from relitigating this issue. *See, e.g.*, *Fairholme Funds, Inc. v. United States*, 26 F.4th 1274, 1300-01 (Fed. Cir. 2022) (explaining that issue preclusion applies when there is an identity of the issues and parties in a prior proceeding, an adjudication of the action on the merits, and a full and fair opportunity to litigate the issue), *cert. denied,* 143 S.Ct. 563 (2023).

## II. If The Court Accepts The Government's Invitation To Move Beyond Jurisdiction And Consider The Merits, Boeing Should Prevail.

For the reasons stated above, *see supra,* pp. 1, 5-6, Boeing's opening brief is necessarily limited to the jurisdictional issues on appeal; therefore, it did not address the merits of the parties' claims. Much of the Government's brief, however, attempts to support the Government's petition to direct the COFC to enter summary judgment for the Government on the merits. Gov't Br. at 1. The Court should reject this request. To be sure, an appellee can seek affirmance of a trial court decision on alternate grounds, but the authority cited by the Government does not support the Government's conflation of jurisdictional arguments and the merits.[4] The

[4] In a footnote, the Government declares that "[i]n some circumstances, 'a ruling that the court lacks subject-matter jurisdiction may simultaneously be a judgment on the merits.'" Gov't Br. at 1 n.1 (quoting *Brownback v. King*, 141 S. Ct. 740, 749 (2021)). Nevertheless, *Brownback* and the other case cited, *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170 (2017), stand only for the

Government itself stressed in the last appeal that "the trial court is the correct venue to determine the underlying merits … in the first instance," Appx1217 n.8 (citing *Kimco Realty Corp. v. United States*, 187 F. App'x 986, 991 (Fed. Cir. 2006)); *see also* Appx1201 n.1, and that determination still has not occurred.

If this Court considers the merits, however, it should direct the COFC to enter judgment for Boeing for the reasons discussed below. This Court has authority to direct the COFC to enter judgment for Boeing. 28 U.S.C. § 2106; *see Jewelers Vigilance Comm., Inc. v. Ullenberg Corp.*, 853 F.2d 888, 890 & n.2 (Fed. Cir. 1988).

### A. The Windfall Contract Price Adjustment Demanded by the Government Violates the CAS Statute.

As noted above, the Government now contends that FAR 30.606 is irrelevant, immaterial, and not controlling. Gov't Br. at 13, 21, 27. This abrupt reversal in position simplifies the path to judgment for Boeing. Until now, the Government has touted FAR 30.606(a)(3)(ii) as its authority to demand a windfall contract price adjustment from Boeing. But if FAR 30.606 now is irrelevant, the Court can move directly to conclude that the Government's claim violates the CAS Statute, as shown by its plain text, statutory purpose, and the Government's longstanding construction of that statute.

---

proposition that a merits issue may be coterminous with an element of jurisdiction. That is not the case here, where the merits have been extrinsic to the COFC's jurisdictional analysis and decision.

### 1. The Plain Text of the CAS Statute Bars the Government's Claim.

The plain text of the CAS Statute supports Boeing. Section 1502(f) requires contractors to agree to a "contract price adjustment" for any "increased costs paid" because of "a change in the contractor's … cost accounting practices":

> **(f) Implementing Regulations.** The Board shall prescribe regulations for the implementation of cost accounting standards prescribed or interpreted under this section. The regulations … shall require contractors … to—
>
> **(1)** disclose in writing their cost accounting practices … and
>
> **(2)** agree to a contract price adjustment, with interest, for any increased costs paid to the contractor or subcontractor by the Federal Government because of ***a change*** in the contractor's or subcontractor's ***cost accounting practices***. . . .

41 U.S.C. § 1502(f). Section 1503(b) explains that this contract price adjustment protects the Government from payment, in the aggregate, of increased costs, but it also bars the Government from using the adjustment to gain a windfall exceeding any aggregate increased costs:

> **(b) Amount of Adjustment.**
>
> A contract price adjustment undertaken under section 1502(f)(2) of this title shall be made, where applicable … so as ***to protect*** the Federal Government from ***payment, in the aggregate, of increased costs***, as defined by the Cost Accounting Standards Board. The Federal Government ***may not recover costs greater than the aggregate increased cost*** to the Federal Government, as defined by the Board, on the relevant contracts subject to the price adjustment unless the contractor [fails to disclose a known change].

*Id.* § 1503(b).

Applying this plain language is straightforward and supports Boeing. Effective January 1, 2011, Boeing changed its cost accounting practices, and the Government concedes it is paying ***less*** because of this change, Appx846—indeed, it is saving nearly $1.5 million, and thus the aggregate increased cost paid by the Government is, indisputably, $0. Even so, the Government still has demanded an additional $1 million contract price adjustment, a claim prohibited by the CAS Statute because it is "greater than the aggregate increased cost to the Federal Government." 41 U.S.C. § 1503(b). The Government argues that it is at liberty to demand this $1 million windfall because there were, in fact, multiple changes in Boeing's cost accounting practices, *see* Gov't Br. at 33, which purportedly permitted the Government to disregard the aggregate impact of the change in Boeing's cost accounting practices and demand a contract price adjustment based exclusively on two discrete cost increasing impacts. This argument conflicts with the CAS Statute's plain language for three principal reasons.

First, the Government misconstrues what constitutes "a change" under the CAS Statute. The operative statutory language contemplates that "a change" can encompass multiple "cost accounting ***practices***." 41 U.S.C. § 1502(f)(2). Here, because Boeing has amended these practices simultaneously, as the Government concedes, Appx20; Appx68, it has effected "a change in … cost accounting practices." On January 1, 2011, there was—effectively and literally—a "change in

[Boeing's] cost accounting practices," which in the aggregate resulted in $0 of increased costs paid by the Government. The operative language in Section 1502(f) and Section 1503(b) covers ***any*** change in "cost accounting practices," which necessarily contemplates—as occurred here—a single simultaneous change, in the aggregate, of multiple cost accounting practices. There is no basis for the Government's argument that the CAS Statute's reference to a "change in … cost accounting practices" must be limited to only singular, discrete changes. *See* Gov't Br. at 33.

The Government's argument is undermined further by *ExxonMobil Oil Corp. v. F.E.R.C.*, 487 F.3d 945 (D.C. Cir. 2007), where the D.C. Circuit interpreted a similar syntactical structure in a statute referring to a "change" (singular) in "economic circumstances" (plural). The D.C. Circuit concluded that the statutory language, "'a substantial change … in the economic circumstances,'" means what it says: "a change in the overall economic circumstances, not a change in one economic circumstance." *Id.* at 960. In fact, one party in *Exxon*—like the Government here—had insisted that the statutory interpretation should turn on the singular "change," arguing "that the presence of the singular indefinite article ['***a*** change'] indicates that any substantial change in a single cost element must qualify … even if that change is offset by other changes such that the pipeline's overall return [or 'economic circumstances'] is unaffected." *Id.* The D.C. Circuit rejected that construction,

reasoning that if Congress had intended it, Congress would have written the statute to refer to a change in "an economic circumstance." *Id.*

The same analysis should apply here. If Congress had intended a price adjustment under Section 1502(f) to be applied only to ***a*** change in ***a*** cost accounting practice (singular), it would have said so.[5] Instead, by using the term "cost accounting practices" (plural) in Section 1502(f), Congress invoked what *Exxon* identified as "a composite of several variables" to capture a change in the "overall picture, rather than in any individual part of that picture." *Id.* at 959.[6]

Second, the Government seeks to void Congress's direction that it calculate—and not recover more than—increased costs "in the ***aggregate***," 41 U.S.C. § 1503(b), yet this aspect of Section 1503(b) serves a critical purpose: It protects contractors against windfall recoveries by the Government. *See DIRECTV Grp., Inc. v. United States*, 670 F.3d 1370, 1378 (Fed. Cir. 2012); *Lockheed Martin Corp. v. United*

---

[5] As discussed, "a change" cannot be sundered from the term "cost accounting practices." However, even the term "a change" necessarily contemplates multiple simultaneous changes in cost accounting practices. "[U]nless the context indicates otherwise … words importing the singular include and apply to several persons, parties, or things." 1 U.S.C. § 1.

[6] The Government previously tried to distinguish *Exxon* by arguing the statute in that case "referred to ***an 'overall' change***" but the CAS Statute refers to "***a change***." Appx1956. That argument is incorrect because the statute at issue in *Exxon* did not include the word "overall." Boeing identified this error in its briefing below, Appx2228-2229, and the Government still has not addressed it, sidestepping it here, as well. *See, e.g.*, Appx2294; Gov't Br. at v (not citing to *Exxon*).

*States*, 70 Fed. Cl. 745, 753 (2006). In *Lockheed Martin*, the Government had argued that the CAS Statute did not expressly require the combination, or aggregation, of cost impacts across different contract types. 70 Fed. Cl. at 753. The COFC correctly rejected this attempt to "create out of whole cloth yet another exception to the [CAS Statute] aggregation rule," declaring that "[t]his result, of course, would be anomalous and provide the government with a windfall," which is "***precisely the result that Congress sought to avoid***." *Id.*; *see also DIRECTV*, 670 F.3d at 1378 ("The Government does not adequately explain how its proposal … avoids providing a prohibited windfall to the Government.").

Here too the Government is advocating for an exception "create[d] out of whole cloth" to the CAS Statute's anti-windfall prohibition, except now by contriving a baseless interpretation of what it means to "aggregate." Gov't Br. 33. As in *DIRECTV*, the Government still has not "adequately explain[ed]" how its argument avoids "a prohibited windfall to the Government." *DIRECTV*, 670 F.3d at 1378.

Third, the Government ignores that the CAS Statute speaks in terms of "payments," not a partial, disaggregated cost impact calculation that, in the aggregate, is never paid by the Government. 41 U.S.C. § 1502(f)(2) ("agree to a contract price adjustment, with interest, for any increased costs ***paid*** to the contractor"); *id.* § 1503(b) ("to protect the Federal Government from ***payment***, in

the aggregate, of increased costs"). This is dispositive because the Government concedes it has paid less, not more, under Boeing's changed cost accounting practices. Appx846.

In sum, the Government's demand for a contract price adjustment from Boeing violates the plain language of the CAS Statute and would provide a windfall to the Government, contravening the CAS Statute, and therefore it is invalid.

### 2. The Government's Claim Conflicts with Its Decades-Long Construction of the CAS Statute.

The Government's interpretation is also undermined by its longstanding historical interpretation and application of the CAS Statute. As discussed above, the record establishes that the CAS Statute was historically interpreted and applied to bar the very windfall contract price adjustment demanded here by the Government. In fact, in a prior case involving the same parties, the ASBCA determined that, in the event FAR 30.606(a)(3)(ii) is not applicable, Boeing should be permitted to aggregate the cost impacts of its simultaneously changed cost accounting practices. *Boeing Co.*, ASBCA No. 57549, 13 BCA ¶ 35,427. The ASBCA based this conclusion on the "record of the 'guidance' and established practice of the government agencies primarily responsible for enforcing the cost accounting standards statute and regulations." *Id.* Here, where the Government now disavows FAR 30.606, this same outcome is binding on the Government as a matter of issue preclusion. Individually and in the aggregate, the plain language of the CAS Statute,

its statutory purpose, and the Government's decades-long construction of that statute dictate that judgment should be entered for Boeing.

### 3. The Government's New Arguments To Escape the CAS Statute Are Baseless.

The Government advances two new arguments designed to evade the CAS Statute's prohibition on government windfalls. Both should be rejected.

First, the Government argues that the CAS Statute is irrelevant because Boeing "ought to be able to convince the Government that its proposed changes are desirable[.]" Gov't Br. at 35. This argument is based on a false premise because the "desirable change" doctrine does not apply. The "desirable change" doctrine applies exclusively when a contractor's change to its cost accounting practices would ***increase*** costs to the Government; it allows a contracting officer to conclude, at her discretion, that the change is nonetheless "desirable" to the Government, thus waiving the Government's right to a contract price adjustment. *See* 48 C.F.R. § 9903.201-6(c)(2); *see also Lockheed Martin Corp.*, ASBCA No. 53822, 07-2 BCA ¶ 33,614; *Raytheon Co.*, ASBCA No. 56701, 11-1 BCA ¶ 34,735 ("On the undisputed material facts and pursuant to the CASB regulations, Raytheon's [] accounting practice change did not result in any increased cost, in the aggregate. . . . In light of that conclusion, we see no need to address the 'desirable change' issue raised by appellant."). It does not apply here, where Boeing's change in cost

accounting practices did ***not*** increase the aggregate costs paid by the Government, and the Government is ***not*** entitled to a contract price adjustment.

Further, if Congress had intended to impose the "desirable change" doctrine, it would have included this prerequisite in the CAS Statute. It did not, and therefore the "desirable change" doctrine cannot be construed as an exception to the CAS Statute's anti-windfall prohibition. *See Hillman v. Maretta*, 569 U.S. 483, 496 (2013) ("[W]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent."); *see Lockheed*, 70 Fed. Cl. at 753 (rejecting the Government's attempt to "create out of whole cloth yet another exception" to the CAS Statute). Indeed, this exception would render a nullity the anti-windfall prohibition of the CAS Statute, enabling the Government to use the absence of a "desirable change" determination as the basis to recover more than the aggregate increased costs caused by any change. The Government cites no basis to suggest that the CAS Statute's protection turns on the precarity of what a contracting officer finds "desirable," and thus, its argument must be rejected.

Second, the Government argues that Boeing has waived any right to argue now, on the merits, that the Government violated the CAS Statute. Gov't Br. at 31-32. The Government is mistaken. From the outset of this litigation, Boeing has consistently asserted—and has not waived—its merits-based challenges to the

Government's violation of the CAS Statute, including in Boeing's briefs on jurisdiction. Boeing was not obligated to assert merits-based arguments in its prior jurisdictional briefing simply to preserve (and not "waive") them; put another way, Boeing has not waived its right to assert an argument on the merits that has been extrinsic to the specific jurisdictional questions raised by the COFC and by the instant appeal of the COFC's dismissal for lack of jurisdiction. Appx2321-2322. To be sure, however, Boeing has consistently maintained that the COFC has jurisdiction to conduct a full *de novo* review of the Government's claim on the merits-based arguments asserted by Boeing, including the Government's violation of the CAS Statute. *See* Appx2385 ("First, the Court has jurisdiction under the controlling statutes to conduct a *de novo* review of the Government's claim against Boeing."); *see also* Boeing Br. at 1 ("Boeing's complaint seeks judicial review by the COFC of a [COFD], issued pursuant to the CDA, asserting a $1 million Government claim against Boeing.").

### B. FAR 30.606 Cannot Salvage the Government's Windfall Contract Price Adjustment.

Even if the Government chooses to rely on FAR 30.606(a)(3)(ii), the Court still should direct the COFC to enter judgment for Boeing for at least three principal and independent reasons.

#### 1. FAR 30.606(a)(3)(ii) Conflicts Directly with the CAS Statute.

As demonstrated, the CAS Statute prohibits the windfall contract price adjustment at issue in this litigation. Section 1502(f) and Section 1503(b)(2) compel the Government to aggregate all cost impacts when there is a "change"—including a change with multiple, simultaneous impacts—"in … cost accounting practices."

FAR 30.606(a)(3)(ii) conflicts with the CAS Statute, however, because it directs the Government to disaggregate cost impacts, ignoring those that result in decreased costs to the Government. *See* FAR 30.606(a)(3)(ii) (stating that a contracting officer "[s]hall not" combine the cost impacts of "[o]ne or more unilateral changes" unless "all of the cost impacts are increased costs to [the] Government"). To the extent FAR 30.606(a)(3)(ii) is relied upon to support a different outcome than what the CAS Statute prescribes, it is unlawful. Where, as here, "Congress has directly spoken to the precise question at issue," then "the court … must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984).

#### 2. The FAR Council Promulgated FAR 30.606(a)(3)(ii) Without Authority.

Further, the FAR Council lacked authority to issue FAR 30.606(a)(3)(ii), rendering it *ultra vires*. *See City of Arlington, Tex. v. FCC*, 569 U.S. 290, 297 (2013). For this reason, as well, any action based on FAR 30.606(a)(3)(ii) is unlawful.

When Congress directs one agency to define a term, it authorizes only that agency to do so. *Union Pac. R.R. Co. v. Surface Transp. Bd.*, 863 F.3d 816, 823 (8th Cir. 2017); *see also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1629 (2018) ("[O]n no account might we agree that Congress implicitly delegated to an agency authority to address the meaning of a second statute it does not administer."). In the CAS Statute, Congress expressly delegated to the ***CAS Board***, not the FAR Council, plenary authority to define how "to protect the [] Government from payment, in the aggregate, of increased costs," including what constitutes "aggregate increased cost to the Federal Government":

> A contract price adjustment undertaken under section 1502(f)(2) … shall be made, where applicable … so as to protect the Federal Government from payment, in the aggregate, of increased costs, ***as defined by the Cost Accounting Standards Board***. The Federal Government may not recover costs greater than the aggregate increased cost to the Federal Government, ***as defined by the Board***. . . .

41 U.S.C. § 1503(b). The Government even concedes that Congress delegated this authority exclusively to the CAS Board. Appx2311.

The FAR Council usurped this authority, however, when it promulgated FAR 30.606(a)(3)(ii). Indeed, the FAR Council has admitted that this provision is based on the FAR Council's interpretation of the "statutory requirement" concerning "increased costs in the aggregate." Appx2133 (FAR Council: "combining the cost-impact of those changes does not comply with the statutory requirement that the Government recover the increased costs in the aggregate for each").

To be sure, in its prior briefing, the Government tendered a limited apology for the FAR Council, arguing that "[t]he FAR Council neither attempted to define 'aggregated increased costs' nor … imposed any 'belief' on its calculation." Appx2312. At the same time, however, the Government tacitly concedes—as it must—that FAR 30.606(a)(3)(ii) now controls the meaning of increased costs in the aggregate.[7] *See, e.g.*, Appx1941 ("FAR 30.606(a)(3)(ii)(A) prohibits the Government from aggregating the cost impact. . . ."); Appx200 (DCMA: "In explaining the phrase [in the aggregate] it in effect limits the permissible interpretations to a smaller set than permitted by the CASB."). This concession is dispositive, and it bars the Government from relying on FAR 30.606(a)(3)(ii).

The Government also has ventured that FAR 30.606(a)(3)(ii) might be considered lawful because it "addresses allowability." Appx1963. This argument fails, as well. According to Congress, the Government's method of calculating a contract price adjustment—the very thing delegated to the CAS Board under Section 1503(b)—does ***not*** involve "allowability." S. Rep. No. 100-424, at 17 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5687, 5703 (concluding that "[a]llowability and other similar policy issues will be addressed … outside the purview of the CAS

[7] In fact, just before the FAR Council promulgated FAR 30.606(a)(3)(ii), DCMA's legal counsel warned that "the [FAR] Councils may not issue binding regulations regarding the phrase 'increased costs, in the aggregate.'" Appx199.

Board"). In all events, the FAR Council's general authority over "allowability" cannot displace Section 1503(b)'s express delegation of authority to the CAS Board to determine "the aggregate increased cost to the Federal Government" of a change to a contractor's accounting practices. To even question whether FAR 30.606(a)(3)(ii) addresses "allowability" ignores that, whatever the case, the regulation still is unlawful.

On appeal, the Government reverts to relying on the *Raytheon* decision from the ASBCA. ASBCA No. 57801, *supra*; *see* Gov't Br. at 30. But, *Raytheon* was wrongly decided. There, the ASBCA incorrectly concluded that the CAS Board had shared the authority to define what to aggregate. *Raytheon*, ASBCA No. 57801, *supra*. As discussed above, however, *see supra,* p. 21, when Congress directs one agency to define a term, it authorizes only that agency to do so.[8] *See Union Pac. R.R.*, 863 F.3d at 823.

### 3. The Rulemaking Process Was Fatally Flawed.

FAR 30.606(a)(3)(ii) would still be unlawful even if it were not *ultra vires*. First, as shown, *see supra,* pp. 16-17, 22, when the FAR Council promulgated FAR 30.606(a)(3)(ii), it failed to meaningfully explain its wholesale rejection of the Government's decades-long interpretation of the CAS statute, prohibiting windfall

[8] DCMA's legal counsel also warned that "the [CAS Board] cannot delegate its responsibility to another government organization." Appx199.

contract price adjustments. *See also* Appx1818-1820 (citing *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125-26 (2016)). Second, the FAR Council's promulgation of FAR 30.606(a)(3)(ii) is, in effect, an improper act of self-dealing, a license to demand a windfall contract price adjustment. Appx1822-1823. Both render unlawful the Government's reliance on FAR 30.606(a)(3)(ii), warranting judgment on the merits for Boeing.

The Government's brief concentrates on arguing that the FAR Council complied with 41 U.S.C. § 1707, *see* Gov't Br. at 31, but this argument fails because the FAR Council neglected to provide the opportunity for notice and comment guaranteed by that statute, § 1707(b), (c). In 2000 and again in 2003, the FAR Council published proposed rules that conformed with—and thus would have codified—the decades-long interpretation prohibiting windfall contract price adjustments, *see* 65 Fed. Reg. 20,854, 20,859 (Apr. 18, 2000); 68 Fed. Reg. 40,104, 40,111 (July 3, 2003), yet the FAR Council subsequently implemented ***the exact opposite*** in FAR 30.606(a)(3)(ii). The final rule thus cannot be seen as a "logical outgrowth" of the FAR Council's proposed rules. *See Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin.*, 407 F.3d 1250, 1260-61 (D.C. Cir. 2005). Because the FAR Council "pull[ed] a surprise switcheroo," *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1108 (D.C. Cir. 2014) (quotation omitted), FAR 30.606(a)(3)(ii) is unlawful and cannot be relied upon.

### C. The Government Cannot Simultaneously Disavow FAR 30.606 and Claim That It Justifies a Windfall Contract Price Adjustment.

At bottom, the Government tries to have it both ways with FAR 30.606, contending that it has no "external" force or effect, yet simultaneously claiming it "internally" justifies the Government's windfall contract price adjustment. Gov't Br. at 2, 13, 20-22, 27. The Court should reject this transparent tactic.

First, the Government argues it is entitled to judgment because "[n]ot every regulation exists for the benefit of contractors," with some "provid[ing] only internal governmental direction." *Id.* at 22. The cases it cites, however, are inapposite: They address a private party invoking a regulation ***against the Government***. Here, the Government relied on FAR 30.606 to assert a claim ***against Boeing***, and Boeing is disputing that claim. When the Government invokes a regulation or policy as the basis for entitlement in a CDA dispute, the court must review it. Boeing Br. at 31-39 (discussing *Texas Health*, 400 F.3d at 900; *GHS Health Maint. Org. v. United States*, 536 F.3d 1293, 1297-99 (Fed. Cir. 2008); *Brownlee v. DynCorp*, 349 F.3d 1343, 1352 (Fed. Cir. 2003); *United States v. Grumman Aerospace Corp.*, 927 F.2d 575, 578 (Fed. Cir. 1991); *Boeing Co. v. United States*, 680 F.2d 132, 139 (Ct. Cl. 1982)). Whether the regulation is "internal" or "external" is immaterial. *See NI Indus. v. United States*, 841 F.2d 1104, 1106-08 (Fed. Cir. 1988).

Second, the Government's case analysis falls short. The Government attempts to distinguish *Texas Health*, claiming that "[t]he regulation at issue in *Texas*

*Health* was fundamentally different than the regulation that Boeing seeks to invalidate in this case." Gov't Br. at 26. This argument plainly fails, considering that—***as the Government's brief acknowledges***—*Texas Health* is a CDA case in which the Federal Circuit affirmed jurisdiction over a complaint challenging the application of a regulation controlling the calculation of a contract rate adjustment, just like the contract price adjustment now regulated by FAR 30.606(a)(3)(ii). *See id.* at 27 ("[The] regulation asserted that Texas Health would not be entitled under its contract to the adjustment."). *Texas Health* squarely applies.

Finally, the Government seeks support from *Southfork Systems, Inc.*, *see* Gov't Br. at 24 (block quoting 141 F.3d 1124 (Fed. Cir. 1998)), but it also admits—as it must—that "the facts and arguments in this case are not identical," *id.* at 25. In fact, the Government understates the disparity. *Southfork* involves a bid protest—not a CDA action—alleging a "breach of the Air Force's duty to fairly and honestly consider all offers," grounded in the COFC's implied-in-fact contract jurisdiction. 141 F.3d at 1134. The protestor could not prove the Air Force acted in bad faith by following unlawfully promulgated regulations, *see id.* at 1134-35, a holding plainly limited to *Southfork*'s place, time, and facts, given that a bid protestor in 1995—like Southfork—had to pursue an "implied-in-fact contract theory" and demonstrate "subjective bad faith on the part of the procuring officials." *Id.* *Southfork* does not apply here, a CDA case mandating a *de novo* standard of review.

## III. The Court of Federal Claims Erred in Dismissing Boeing's Illegal Exaction Claim.

The Court also should reverse the COFC's dismissal of Count IV, Boeing's illegal exaction claim. The law of the case controls, providing clear jurisdiction to the COFC to address this claim, notwithstanding the Government's attempt to mince this Court's words and subvert that mandate. Further, the CDA creates no obstacle to jurisdiction; to the contrary, the CDA guarantees it.

### A. The Law Of The Case Establishes The COFC's Jurisdiction.

This Court's prior ruling determining the COFC's jurisdiction over Boeing's illegal exaction claim was unequivocal: "Boeing has established jurisdiction for its illegal exaction claim." *Boeing*, 968 F.3d at 1383. The Government's brief parses the Court's analysis and argues the Court failed to address all potential objections to the COFC's jurisdiction, Gov't Br. at 43, but this Court was not required to address every theoretical argument related to its prior jurisdictional conclusion. The Court considered "by necessary implication" all jurisdictional arguments. *Smith Int'l, Inc. v. Hughes Tool Co.,*759 F.2d 1572, 1577 (Fed. Cir. 1985). Relitigating jurisdiction now, under another permutation of argument, is precisely what the law-of-the-case doctrine bars. *See Constant v. United States*, 929 F.2d 654, 657 (Fed. Cir. 1991).

### B. The CDA Does Not Preclude An Illegal Exaction Claim.

The Government's new approach, which should be rejected if considered, is that the CDA divests the COFC of any jurisdiction over Boeing's illegal exaction

claim. *See* Gov't Br. at 45-46. This position cannot be reconciled with the plain language of the CDA, which covers any claim "relating to a contract," 41 U.S.C. § 7103(a)(l) & (3), or with this Court's precedent broadly interpreting the CDA, *see Todd Constr., L.P. v. United States,* 656 F.3d 1306, 1311 (Fed. Cir. 2011) (noting Congress intended the CDA to confer "comprehensive jurisdiction" and thus chose "expansive, not restrictive, language"). While it may be rare for a plaintiff like Boeing to have an illegal exaction claim "relating to a contract," that claim still may be brought under the CDA, according to the CDA's procedural framework. By analogy, this Court has recognized the CDA confers jurisdiction over an APA-style claim to invalidate a regulation, so long as it is "relating to a contract." *Texas Health*, 400 F.3d at 896 (designating it a "contract claim").

Here, there is no disputing that Boeing properly asserted its illegal exaction claim under the CDA's procedural framework, and CDA jurisdiction over this claim therefore exists. Indeed, even to the extent the CDA is "exclusive," *see* Gov't Br. at 36, it means only that a plaintiff must assert its claims "relating to a contract" under the CDA, which Boeing did here. It does not deny the right to bring that claim altogether. *See Res. Conservation Grp., LLC v. United States*, 597 F.3d 1238, 1245 (Fed. Cir. 2010) ("It seems quite unlikely that Congress would intend that statute to deny a pre-existing remedy without providing a remedy under the new statute."). In fact, a case from the Government's brief, *Horne v. Department of Agriculture*, 569

U.S. 513, 527 (2013), proves this point, supporting Boeing. There, the Court explained that even if the Agricultural Marketing Agreement Act (AMAA) eliminated Tucker Act jurisdiction over AMAA-related takings claims, it did not extinguish the right to assert those claims, but rather redirected them to the AMAA's "comprehensive remedial scheme." *See id.* at 528-29.

At bottom, as this Court has already found, the COFC has jurisdiction over Boeing's illegal exaction claim. *Boeing*, 968 F.3d at 1383. That jurisdiction can be found under the CDA or under the Tucker Act: Either Boeing's claim relates to the contract and is within the CDA's scope, in which case the CDA confers jurisdiction, or it is not related to the contract and is therefore outside the CDA's scope, in which case the Tucker Act confers jurisdiction.

## CONCLUSION

Because the COFC has jurisdiction over this entire action, this Court should reverse the COFC's decision and remand for further proceedings. However, if this

Court considers the merits, it should direct the COFC to enter summary judgment for Boeing.

/s/ Scott M. McCaleb
Scott M. McCaleb
Jon W. Burd
Gary S. Ward
George E. Petel
Jennifer Eve Retener
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
(202) 719-7000

Jade Totman
THE BOEING COMPANY
929 Long Bridge Drive
Arlington, VA 22202
(703) 465-3039

April 6, 2023

*Counsel for Appellant*
*The Boeing Company*

**CERTIFICATE OF COMPLIANCE**
**WITH TYPE-VOLUME LIMITATIONS**

This filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it has been prepared using a proportionally spaced typeface and includes 6,942 words.

/s/ Scott M. McCaleb
Scott M. McCaleb
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
(202) 719-7000

April 6, 2023

*Counsel for Appellant*
*The Boeing Company*