# United States Court of Appeals for the Federal Circuit

---

**THE BOEING COMPANY,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2023-1018

---

Appeal from the United States Court of Federal Claims in No. 1:17-cv-01969-PEC, Judge Patricia E. Campbell-Smith.

---

Decided: October 4, 2024

---

SCOTT M. MCCALEB, Wiley Rein, LLP, Washington, DC, argued for plaintiff-appellant. Also represented by JON W. BURD, GEORGE EMIL PETEL, GARY SCOTT WARD; JADE TOTMAN, The Boeing Company, Arlington, VA.

DANIEL B. VOLK, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by BRIAN M. BOYNTON, ELIZABETH MARIE HOSFORD, BORISLAV KUSHNIR, PATRICIA M. MCCARTHY.

---

Before TARANTO, HUGHES, and STOLL, *Circuit Judges*.

HUGHES, *Circuit Judge*.

The Boeing Company appeals the final decision of the Court of Federal Claims dismissing Boeing's complaint in its entirety. Boeing's complaint contained three contract claims (Counts I, II, and III) and an illegal exaction claim (Count IV). On cross-motions for summary judgment, the trial court "decline[d] to extend its jurisdictional reach to include challenges to the validity of a regulation" (48 C.F.R. § 30.606), and thus dismissed Counts I, II, and III without prejudice. *Boeing Co. v. United States*, 162 Fed. Cl. 78, 85 (2022); J.A. 8–9. The court acknowledged that it had jurisdiction over the illegal exaction claim but nonetheless determined that it "lack[ed] the authority to consider" it, and thus dismissed Count IV with prejudice. *Id.* We reverse and remand as to all four Counts.

I

Before addressing the relevant facts and procedural history of this action, we begin with a brief overview of the applicable legal framework.

A

The Cost Accounting Standards (CAS) Board has "exclusive authority to prescribe, amend, and rescind cost accounting standards" governing contracts with the Federal Government. 41 U.S.C. § 1502(a)(1). We have previously stated:

> Standards promulgated by the [CAS] Board are "mandatory for use by all executive agencies and by contractors and subcontractors in estimating, accumulating, and reporting costs in connection with the pricing and administration of, and settlement of disputes concerning, all negotiated prime contract and subcontract procurements with the Federal Government in excess of the amount set forth

in section 2306a(a)(1)(A)(i) of title 10," which refers to contracts worth more than $2 million.

*Boeing Co. v. United States*, 968 F.3d 1371, 1374 (Fed. Cir. 2020) (quoting 41 U.S.C. § 1502(b)(1)(B)); J.A. 1568.

Additionally, the CAS Board is required to "prescribe regulations for the implementation of cost accounting standards prescribed or interpreted under this section." 41 U.S.C. § 1502(f). Those CAS regulations are then "incorporated into the Federal Acquisition Regulation" (FAR). *Id.*; FAR 30.101(b) ("[T]he CAS, and any other regulations promulgated by the [CAS Board]. . . are incorporated in [FAR] part 30."). Further, as a condition for contracting with the Federal Government, the CAS regulations require contractors to "agree to a contract price adjustment, with interest, for any increased costs paid to the contractor or subcontractor by the Federal Government because of a change in the contractor's or subcontractor's cost accounting practices or a failure by the contractor or subcontractor to comply with applicable cost accounting standards." *Id.* § 1502(f)(2).

Subsection 606 of FAR part 30 (48 C.F.R. § 30.606) outlines the procedures for adjusting a contract price to "resolve a cost impact attributed to a change in cost accounting practice or a noncompliance." FAR 30.606(a)(2). FAR 30.606 gives the contracting officer discretion to "adjust[] a single contract, several but not all contracts, all contracts, or any other suitable method." *Id.* But the regulation also limits that discretion—it instructs the contracting officer not to "combine the cost impacts of . . . [o]ne or more unilateral changes" "unless all of the cost impacts are increased costs to [the] Government." *Id.* § 30.606(a)(3)(ii)(A). The amount of a contract price adjustment is also limited by the CAS statute's contract price adjustment section: "[t]he Federal Government may not recover costs greater than the aggregate increased cost to the Federal Government." 41 U.S.C. § 1503(b). Further,

41 U.S.C. § 1503(a) provides that any disagreement as to a contract price adjustment, "including whether the contractor or subcontractor has complied with the applicable cost accounting standards . . . constitute[s] a dispute under chapter 71 of [title 41]," *i.e.*, a dispute under the Contract Disputes Act (CDA), 41 U.S.C. §§ 7101–09. *See, e.g.*, *Boeing*, 968 F.3d at 1375; J.A. 1569.

If the contractor and the government fail to agree on a CAS-governed contract price adjustment, the CDA authorizes the contracting-party to submit a certified claim to a contracting officer for a final written decision. *See* 41 U.S.C. § 7103(a)(1)–(3). A contractor may dispute a contracting officer's final decision by either "appeal[ing] the decision to an agency board," *id.* § 7104(a), or "bring[ing] an action directly on the claim in the United States Court of Federal Claims," *id.* § 7104(b)(1). Pursuant to § 1491(a)(2) of the Tucker Act, the Court of Federal Claims has exclusive jurisdiction over all CDA claims. 28 U.S.C. § 1491(a)(2) ("The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under *section 7104(b)(1) of title 41*, including a dispute concerning . . . compliance with cost accounting standards . . . ." (emphasis added)).

Pursuant to § 1491(a)(1) of the Tucker Act, the Court of Federal Claims also has jurisdiction to entertain monetary claims against the United States based on contracts with the United States, the Constitution, or other money mandating statutes or regulation. 28 U.S.C. § 1491(a)(1). Notably, such jurisdiction specifically encompasses so-called illegal exaction claims brought pursuant to § 1491(a)(1). *See Ontario Power Generation, Inc. v. United States*, 369 F.3d 1298, 1301 (Fed. Cir. 2004) (describing the types of "underlying monetary claims," including illegal exaction claims, that are properly brought under 28 U.S.C. § 1491(a)(1)).

B

The Boeing Company (Boeing) holds many CAS-governed contracts with the government. Effective January 1, 2011, Boeing voluntarily and simultaneously changed eight of its disclosed cost accounting practices. In June 2014, Boeing submitted a cost impact proposal related to the eight changes. Two of the changes increased the government's costs on the existing contracts, while the remaining six changes were either neutral or decreased the government's costs. Ultimately, Boeing estimated that the net effect of its changed practices would decrease the government's costs by just under $1.5 million.

In December 2016, after an audit by the Defense Contract Audit Agency, the government sent Boeing a contracting officer's final written decision requesting reimbursement of $1,064,773 "in accordance with FAR Part 30.6," which accounted for the increased costs, plus interest, related to the two January 2011 price increasing changes. *See* J.A. 58–60. The final decision also provided notice to Boeing of its right to appeal the decision or bring an action directly in the Court of Federal Claims. J.A. 63–64. Boeing, pursuant to 41 U.S.C. § 1503(b), challenged the appropriateness of "the Government's demand that Boeing pay a $1,064,773 price adjustment." J.A. 56. According to Boeing, there were no cost increases to the government *in the aggregate*, because the cost increases were "offset" by the cost decreases. J.A. 55–56. On September 25, 2017, in response to the contracting officer's December 2016 final decision, Boeing submitted a letter to the contracting officer with the subject: "Request for Contracting Officer's Final Decision." *See id.* In the letter, Boeing requested: (1) "a final decision interpreting the affected contracts"; (2) "[i]n the alternative, . . . reformation of [Boeing's] affected contracts with the Government"; (3) "a final decision finding that the December 21 [2016 Contracting Officer's Final Decision]'s demand of $1,064,773 breaches the Government's obligations to Boeing under each of the affected contracts";

and (4) "a final decision holding that the Government's demand that Boeing pay a $1,064,773 price adjustment . . . amounts to an illegal exaction." *Id.* In a letter dated November 21, 2017, the contracting officer determined that aside from Boeing's request for reformation of the affected contracts, the remaining requests were "not a new claim but a request for reconsideration of [the December 2016 Contracting Officer's Final Decision]." *Id.* The contracting officer subsequently denied Boeing's claim, stating that her December 2016 decision "stands as written" and that she would neither reconsider her earlier decision nor issue a new final decision as Boeing had requested. *See* J.A. 56. Thereafter, Boeing began paying $8,900 per month pursuant to an installment agreement.

On December 18, 2017, Boeing filed a complaint in the Court of Federal Claims against the United States. J.A. 18–53. Boeing asserted that the trial court had jurisdiction under the CDA (41 U.S.C. § 7104(b)(1)), or, in the alternative, under the Tucker Act (§ 1491(a)(1)). J.A. 24. In its complaint, Boeing re-asserted the same four claims that it had alleged in its September 2017 letter to the contracting officer. Counts I, II, and III of Boeing's complaint are contract claims and alternative Count IV is an illegal exaction claim. Boeing alleged that the government breached the relevant contracts by seeking to "recover[] costs greater than the aggregate increased costs to the Federal Government," in violation of the relevant FAR and CAS provisions incorporated into the contracts. J.A. 48–49.

Subsequently, Boeing moved for judgment on the pleadings under Rule 12(c) of the U.S. Court of Federal Claims (RCFC or Rule). *Boeing Co. v. United States*, 143 Fed. Cl. 298, 301 (2019), *rev'd and remanded*, 968 F.3d 1371 (Fed. Cir. 2020). The government moved to dismiss under Rules 12(b)(1) and 12(b)(6) or, in the alternative, for

summary judgment under Rule 56.[1] *Id.* On May 29, 2019, the trial court granted the government's combined motion to dismiss and motion for summary judgment. *See* J.A. 1059–80; *Boeing*, 143 Fed. Cl. at 301. In its analysis, the trial court held that Boeing had waived its contract claims and further concluded that it lacked jurisdiction to consider the illegal exaction claim because the statute pursuant to which the claim was brought was not money mandating. *Boeing*, 143 Fed. Cl. at 314–15. Boeing appealed the trial court's decision to this court, and we reversed and remanded on all counts, "concluding that the trial court misapplied the doctrine of waiver and misinterpreted the jurisdictional standard for illegal exaction claims." *Boeing*, 968 F.3d at 1373–74. More specifically, we stated that "to establish [§ 1491(a)(1)] Tucker Act jurisdiction for an illegal exaction claim, a party that has paid money over to the government and seeks its return must make a non-frivolous allegation that the government, in obtaining the money, has violated the Constitution, a statute, or a regulation." *Id.* at 1383.

C

On remand, the parties filed cross-motions for summary judgment. The trial court determined that it lacked jurisdiction over Boeing's contract claims and lacked the authority to consider the illegal exaction claim. It dismissed Boeing's contract claims—Counts I, II, and III—without prejudice, and Boeing's alternative illegal exaction claim—Count IV—with prejudice. As to Boeing's contract

---

[1] Although Boeing and the government moved for judgment on the pleadings under Rule 12(c) and dismissal under Rule 12(b), respectively, the trial court converted these motions to Rule 56 motions for summary judgment because the parties supported their arguments with matters outside the pleadings. J.A. 1061–62; *Boeing*, 143 Fed. Cl. at 302–03.

claims, the trial court concluded that "the gravamen of [Boeing's] complaint is a challenge to the validity of FAR 30.606," and therefore determined that it "does not have jurisdiction to review the validity of regulations pursuant to the Administrative Procedure Act (APA), 5 U.S.C. § 702." *Boeing*, 162 Fed. Cl. at 84; J.A. 5–6. As for Boeing's illegal exaction claim, the trial court recognized that our prior opinion remanding the case affirmatively concluded that the trial court "has jurisdiction to hear [Boeing]'s illegal exaction claim." *Boeing*, 162 Fed. Cl. at 85; J.A. 8. Nevertheless, the trial court stated, "[n]otwithstanding that conclusion, the court lacks the authority to consider [Boeing]'s illegal exaction claim because challenges to the application of the CAS statute must be made under the CDA," rather than by alleging an illegal exaction. *Id.*

Boeing appeals the trial court's dismissal as to all four counts. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## II

This court reviews the Court of Federal Claims's legal conclusions de novo and its factual findings for clear error. *Love Terminal Partners, L.P. v. United States*, 889 F.3d 1331, 1340 (Fed. Cir. 2018).

## III

We first address the trial court's dismissal of Boeing's contract claims in Counts I, II, and III, and then turn to the trial court's dismissal of Boeing's illegal exaction claim in Count IV.

### A

On appeal, Boeing argues that the trial court "erred in dismissing Boeing's complaint because it plainly has jurisdiction to resolve the parties' dispute over the [contracting officer's] final decision assessing a contract price adjustment." Appellant's Br. 26. Boeing first contends that the

CDA confers broad jurisdiction to the Court of Federal Claims over disputes relating to procurement contracts, and that the trial court's "characteriz[ation of] Boeing's claim as disputing the validity and application of [a regulation]" is irrelevant to the trial court's jurisdiction. Appellant's Br. 27, 31. Second, Boeing argues that the trial court relied on inapposite case law to erroneously "divest[] itself of jurisdiction." *See* Appellant's Br. 39. We agree and address each issue in turn.

1

The trial court's determination that it did not have jurisdiction to review Boeing's contract claims rests on its conclusion that the true nature of the action "is a challenge to the validity of FAR 30.606" and therefore, "is not a contract case." *See* J.A. 5 (citation omitted). We disagree. The CDA explicitly provides that for contract-related claims against the government, "a contractor may bring an action directly on the claim in the United States Court of Federal Claims." 41 U.S.C. § 7104(b)(1). Such is the case here. Although Boeing's claims implicate the validity of FAR 30.606, the "true nature of the action" is undoubtedly a contract dispute. *Katz v. Cisneros*, 16 F.3d 1204, 1207 (Fed. Cir. 1994) ("Regardless of the characterization of the case ascribed by [the plaintiff], we look to the true nature of the action in determining the existence or not of jurisdiction."). Before the contracting officer, the government argued that under the relevant contracts, Boeing owes $1,064,773 in "increased costs, plus interest." Appellee's Br. 7, 21 n.9; J.A. 58–60. Conversely, Boeing argues that it does not owe such costs under the relevant contracts. Thus, at its core, Boeing disputes the government's position that it is entitled to $1,064,773 in contract-related costs. There can be no question that the parties' disagreement over whether Boeing owes the government money under the contracts is a contract dispute to be appropriately resolved by the Court of Federal Claims pursuant to its jurisdiction under the CDA and § 1491(a)(2) of the Tucker Act.

Further, this court has previously held that when a contract dispute properly falls under the CDA, it "is of no consequence to the question of jurisdiction" that the complaint seeks to invalidate a regulation. *See Tex. Health Choice, L.C. v. Off. of Pers. Mgmt.*, 400 F.3d 895, 898–900 (Fed. Cir. 2005) (ordering the district court to transfer the suit "relating to the validity of [a r]egulation" and "involving a contract claim filed by a contractor against the United States" to the Court of Federal Claims, which has "exclusive jurisdiction" over such suits pursuant to the CDA). Although not binding on this court, other courts have similarly confirmed that statutory challenges do not impact the Court of Federal Claims's exclusive jurisdiction over claims arising under the CDA. *See Lockheed Martin Corp. v. Def. Cont. Audit Agency*, 397 F. Supp. 2d 659, 665 (D. Md. 2005) ("It is well-established therefore that disguised contract actions may not escape the CDA. Neither contractors nor the government may bring a contract action in federal district court simply by recasting claims in tort language or as some statutory or regulatory violation.") (quoting *United States v. J & E Salvage Co.*, 55 F.3d 985, 988 (4th Cir. 1995)). Though Boeing challenges the validity of a certain regulation, the Court of Federal Claims still maintains exclusive jurisdiction over the action because Boeing's contract claims are properly subject to the CDA.

The government nevertheless argues that the trial court lacks jurisdiction because "the outcome of the case" does not depend "on the validity of [the challenged] regulation." Appellee's Br. 20. This is incorrect. Boeing asserts that the government is not entitled to increased costs because FAR 30.606 is invalid in view of the CAS provisions and regulations. Appellant's Br. 1–2, 31; *see also* 41 U.S.C. § 1503(b) (CAS statute prohibiting the government from recovering "costs greater than the *aggregate* increased cost" (emphasis added)). As the government concedes, FAR 30.606 "provides instructions to [the government's] contracting officers," Appellee's Br. 22, on how to "resolve

a cost impact attributed to a change in cost accounting practice," FAR 30.606(a)(2). If, as Boeing contends, the regulation is invalid, then the instructions the contracting officer used to calculate the alleged increased costs central to this dispute would also be invalid. Therefore, resolution of this contract dispute—*i.e.*, whether under the contract, the government is entitled to recover increased costs calculated pursuant to FAR 30.606—is inextricably intertwined with the validity of the regulation. As such, we conclude that the Court of Federal Claims has jurisdiction under the CDA to resolve this contract dispute and the validity of the underlying regulation.

2

The trial court erred when it determined that, pursuant to § 702 of the APA, it lacked jurisdiction to determine the validity of FAR 30.606. *See* J.A. 6–8. The trial court is correct that, in general, for actions that do not involve contract-related claims, the Court of Federal Claims's limited jurisdiction under the Tucker Act does not authorize review of pure challenges to the validity of a regulation. *See* J.A. 6–7 (citing *Land Shark Shredding, LLC v. United States*, 842 F. App'x 589, 593 (Fed. Cir. 2021); *Martinez v. United States*, 333 F.3d 1295, 1313 (Fed. Cir. 2003) (en banc); *Southfork Sys., Inc. v. United States*, 141 F.3d 1124, 1135 (Fed. Cir. 1998); *Crocker v. United States*, 125 F.3d 1475, 1476 (Fed. Cir. 1997); *Suburban Mort. Assocs., Inc. v. United States Dep't. of Hous. & Urb. Dev.*, 480 F.3d 1116, 1126–27 (2007); *Katz*, 16 F.3d at 1209. Instead, such regulations are properly challenged in a district court under the APA. *See* 5 U.S.C. §§ 702–06; *see also Boeing*, 162 Fed. Cl. at 84; J.A. 6. However, as discussed above, when the action is a contract case—and more importantly, a contract case that is subject to the CDA—the Court of Federal Claims has exclusive jurisdiction to review the validity of the challenged regulation. Unlike non-contract cases, "there is no other alternative such as the district courts [for claims subject to the CDA]. The purpose for centralizing the

resolution of government contract disputes in the Court of Federal Claims, rather than in district court, is to ensure national uniformity in government contract law." *Tex. Health*, 400 F.3d at 899 (citing *Katz*, 16 F.3d at 1210).

The trial court's erroneous jurisdictional conclusion to the contrary can easily be explained by its reliance on inapposite case law. Unlike *Texas Health* and the case at hand, the Federal Circuit precedent that the trial court relied on did not involve contract disputes properly brought under the Court of Federal Claims's exclusive jurisdiction over CDA claims. *See Boeing*, 162 Fed. Cl. at 84–85; J.A. 6–8 (collecting cases). Because the cases that the trial court used to support its jurisdictional analysis of Boeing's contract claims are irrelevant here, they do not address the jurisdictional question at hand in this contract dispute and the trial court erred by relying on them.

We decline the government's invitation to evaluate the grant of summary judgment on the merits. Appellee's Br. 2. *See, e.g.*, *Exmark Mfg. Co. v. Briggs & Stratton Power Prod. Grp.*, 879 F.3d 1332, 1344 (Fed. Cir. 2018); *OSRAM Sylvania, Inc. v. Am. Induction Techs., Inc.*, 701 F.3d 698, 707 (Fed. Cir. 2012).

B

Boeing also appeals the trial court's dismissal of its illegal exaction claim, arguing that the "Court of Federal Claims has jurisdiction over [the claim], and nothing bars it from adjudicating [the claim] on the merits." Appellant's Br. 43. We agree.

When this case was previously before this court, we held that in the context of the Court of Federal Claims's jurisdiction under the Tucker Act, "Boeing has established jurisdiction for its illegal exaction claim." *Boeing*, 968 F.3d at 1383. Yet on remand, the trial court, noting our court's jurisdictional guidance, determined it did not have "authority to consider" Boeing's illegal exaction claim

*pursuant to the CDA*. *See* J.A. 8. In its analysis, without addressing its jurisdiction under § 1491(a)(1) of the Tucker Act, the trial court simply stated that Boeing's illegal exaction claim "must be brought under the CDA," because "[w]hen the [CDA] applies, it provides the exclusive mechanism for dispute resolution." J.A. 8 (second alteration in original) (quoting *Dalton v. Sherwood Van Lines, Inc.*, 50 F.3d 1014, 1017 (Fed. Cir. 1995)). Therefore, the trial court concluded that Boeing's "illegal exaction claim is barred in this case" and dismissed it because Boeing "cannot make a showing sufficient to establish its ability to bring an illegal exaction claim in this case." *Boeing*, 162 Fed. Cl. at 86; J.A. 8–9.

The trial court is correct that, in *Dalton*, we stated that the CDA is the exclusive mechanism for dispute resolution, and "was not designed to serve as an alternative administrative remedy, available at the contractor's option." 50 F.3d at 1017. Importantly, however, we were addressing a different question than the one presented in this case—namely, whether Congress intended for "two remedial schemes," *i.e.*, administrative review under the Transportation Act of 1940, 31 U.S.C. § 3726 (payment for transportation) and the CDA "to apply to the same disputes." *See Dalton*, 50 F.3d at 1017 In addressing that question, we recognized that, if Congress intended for the CDA—an exclusive mechanism for resolution—to apply to a contract-related transportation dispute, then the Transportation Act's procedures and regulations would therefore not apply. *Id.* After noting the many differences between the statutes, we determined that the two "schemes cannot be regarded as complementary," and ultimately concluded that "Congress did not intend the general provisions of the Contract Disputes Act to supplant the pre-existing system of administrative review specifically designed for transportation services subject to Section 3726." *Id.* at 1018. Because Congress did not intend for both statutory schemes to apply, we determined that the specifically designed

administrative review procedures under the Transportation Act, and not the CDA, governed the dispute. *Id.* Therefore, because the contract-related transportation claims were not subject to the CDA, we held that the Armed Services Board of Contract Appeals lacked authority over the dispute. *Id.* at 1015. Our holding in *Dalton* does not, however, stand for the proposition that when the Court of Federal Claims exercises its exclusive jurisdiction over properly raised CDA claims, it is consequently prohibited from simultaneously exercising its statutory jurisdiction over non-CDA monetary claims properly raised under § 1491(a)(1). *Cf. Sergent's Mech. Sys., Inc. v. United States*, 157 Fed. Cl. 41, 54 (2021) ("[T]he Court readily acknowledges that nothing precludes a party from including both a CDA claim and an action pursuant to § 1491(b) in the same complaint.").

For two reasons, we disagree with the trial court's implicit conclusion that its § 1491(a)(1) jurisdiction is unavailable. First, although Boeing raised its illegal exaction claim in its certified CDA claim, it alleged the claim in its complaint as an alternative theory for damages "to the extent [the trial court] concludes that Boeing has no remedy in contract." J.A. 52. Count IV was therefore appropriately raised as a separate, independent, and alternative basis for Boeing to seek relief. *See* RCFC 8(d)(2). While Counts I, II, and III involve Boeing's contract claims and should thus all be resolved under the exclusive dispute mechanism of the CDA, that is not the case for Boeing's separate claim for illegal exaction. Instead, Count IV was properly asserted under the Court of Federal Claims's § 1491(a)(1) jurisdiction, *see Boeing*, 968 F.3d at 1383, and should have been adjudicated accordingly.

Second, the trial court and the government misinterpret our holdings in *Dalton* and its progeny. *Dalton* simply stands for the proposition that when claims are properly raised under the CDA, alternative dispute mechanisms *not provided for by Congress* are inapplicable. *See Dalton*, 50

F.3d at 1017–18 (discussing how Congress intended for the CDA to apply). However, *Dalton* does not stand for the proposition that the Court of Federal Claims must relinquish its statutorily authorized § 1491(a)(1) jurisdiction over certain properly raised claims merely because it can also exercise its jurisdiction under the CDA over other claims in the same action. Nor is such a scenario implicated by *Dalton*. In *Dalton*, whether Congress intended the agency board to have authority over the contract-related transportation dispute turned on whether the CDA or § 3726 applied (*i.e.*, if the CDA did not apply, Congress did not intend for the agency board to have jurisdiction). But here, unlike in *Dalton*, Congress clearly provided the Court of Federal Claims with specific jurisdiction over contract claims arising under the CDA, *see* 41 U.S.C. § 7104(b); *see also* 28 U.S.C. § 1491(a)(2), as well as jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort," 28 U.S.C. § 1491(a)(1). Therefore, although the CDA (and the trial court's exclusive jurisdiction thereunder) serves as the exclusive mechanism of dispute resolution for Boeing's contract claims, the Court of Federal Claims may nevertheless still exercise its statutory authorized jurisdiction over Boeing's non-contract claim, *i.e.*, its illegal exaction claim, that is properly raised under 28 U.S.C. § 1491(a)(1). This is not inconsistent with *Dalton*.

Section 1491(a)(2) of the Tucker Act, and § 704(b) of the CDA provide the Court of Federal Claims with exclusive jurisdiction over Boeing's contract claims. Section 1491(a)(1) of the Tucker Act provides the Court of Federal Claims with jurisdiction over Boeing's alternative

illegal exaction claim.[2] Therefore, the Court of Federal Claims legally erred in dismissing Boeing's claims.

## IV

Because we conclude that the Court of Federal Claims has jurisdiction over Boeing's contract claims and illegal exaction claim, we reverse the trial court's dismissal of Counts I, II, and III without prejudice and its dismissal of Count IV with prejudice. We remand the case to the trial court for further proceedings consistent with our holding in this opinion.

## REVERSED AND REMANDED

## COSTS

Costs to Appellant.

---

[2] To the extent that Boeing argues that an illegal exaction claim can be properly raised under the CDA, because we conclude the trial court has proper jurisdiction to reach the merits of the claim under its § 1491(a)(1) jurisdiction, we do not reach this issue.